## THE OLGA.[1]

### REVERE COPPER CO. *v.* THE OLGA.

*(District Court, S. D. New York.* June 29, 1887.)

1. MARITIME LIEN—FOREIGN VESSEL.—CONFLICT OF LAWS.
   When liens are enforced against an Italian vessel, the provisions of the Italian Code should be observed, by comity, in respect to the claims of those on board, as among themselves.
2. SAME—LEX LOCI CONTRACTUS—LEX FORI.
   As respects liens arising on contracts made within this jurisdiction by the master of a foreign vessel, and the priorities of such liens in respect to all the claims on the ship, our law, as the law of the place of contract, as well as of the forum, should prevail. In this case, *held,* that there was no conflict between the Italian Code and the provisions of the general maritime law, as applied in this country, in regard to the liens under consideration.
3. SAME—PRIORITY.
   A classification of liens against a foreign vessel for port dues, pilotage, provisions for crew, wages, towage, stevedore's charges, bottomry, master's lien for wages, etc., given.

The Italian bark Olga, hailing from Castellamare, Italy, contracted to the libelant company above named, at New York, in August, 1886, a debt for copper-sheeting. For the unpaid balance of that bill the master gave a bottomry draft, by which he bound his vessel and freight for repayment upon return of the bark to New York, and provided that any other draft he might draw upon his consignees should be secondary to the lien of this obligation. The vessel, on her return voyage, borrowed necessary funds at Cette and at Marseilles on bottomry; and at Almeria, her port for loading her return cargo, she obtained advances from the freighters which exceeded by $24 the amount of her freight found due on delivery at New York. Upon her arrival at Perth Amboy, New Jersey, her cargo was discharged, and she was soon after libeled and sold upon the claim of the Revere Copper Company. Libels for the other bottomry claims, and libels by the master and crew for wages, were filed; and petitions were afterwards presented for payment of the ship's obligations for pilotage, towage, custom-house, and port expenses, and provisions for crew while in port upon her last voyage. The proceeds of the vessel, less marshal's fees, were $2,531.24. The amount of the aggregate liens proved on the above claims was about double that sum.

*Alexander & Green,* for libelants, F. Mannberguer and others.

*Olin, Rives & Montgomery,* for libelants, Tod and others.

*Hobbs & Gifford,* for American Ballast Log Co.

*Wing, Shoudy & Putnam,* for Revere Copper Co., and wages, claims, etc.

BROWN, J. The proceeds of the vessel sold being insufficient to pay all the liens upon her, and the liens being diverse in character, they must be paid in the order of their relative rank under the maritime law.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

The vessel is Italian, and the provisions of the Italian Code should, therefore, be observed by comity, as respects the claims of those on board the vessel, as among themselves, including the claim of the master. *The Brantford City*, 29 Fed. Rep. 373, 384, 385. As respects the liens arising upon the contracts made by the master within this jurisdiction, and the priorities of such liens in respect to all the claims on the ship, our own law, as the law of the place of the contract as well as of the forum, should, I think, prevail. There is no conflict of laws, however, in this case; since the Italian Code[1] expresses, I think, the general maritime law, as understood and applied in the courts of this country, as to the relative rank of all the liens presented in this case.

The proceeds will therefore be distributed in the following order: (1) The taxed costs of the Revere Copper Company, upon whose libel the vessel was sold. (2) The port dues, as established by law. (3) The claims of the pilots for pilotage; also towage, if taken necessarily, and as part of a pilotage service, but not otherwise. *The Mystic*, 30 Fed. Rep. 73. (4) Claims for necessary provisions furnished for the support of the crew since the vessel's arrival in port, and up to the completion of the voyage and the discharge of the cargo. (5) Wages of seamen. As the fund is more than sufficient for the above claims, they will be paid in full. (6) In concourse with each other, to be paid ratably, since the residue of the proceeds will be insufficient to pay all, (*a*) bills for towage into port other than above stated in class 3; (*b*) stevedore's expenses of unloading cargo after applying the freight thereupon, which in this case is nothing; (*c*) other liens necessarily contracted by the vessel since her arrival in

---

[1]The following are the provisions of the Italian Code of Commerce, relating to liens upon vessels:

"Art. 674. Ships, and shares therein, are bound, even when in the possession of a third party, for the payment of debts which the law declares privileged, in the measure and within the limits stated below.

"Art. 675. The following claims are privileged upon the ship, and rank against its proceeds in the order prescribed in this article. (1) Law costs incurred in the common interest of the creditors, in preserving and enforcing rights against the ship. (2) Expenses, indemnities, and rewards for salvage services during the last voyage, in conformity with the provisions of the Mercantile Marine Code. (3) Navigation dues established by law. (4) Pilotage, expenses of custody, and charges of watching the ship since its arrival in port. (5) Expenses of storage for deposit of ship's tackle and apparel. (6) Expense of maintaining (*manutenzione*) the ship and its apparel and furniture subsequent to its last voyage and arrival in port. (7) Wages, emoluments, and compensation due (according to provisions of title third of this book) to the master and any other person of the crew, (*al capitano ed alle altre persone dell' equipaggio,*) for the last voyage, as well as the repayments due to the mercantile marine sick fund for the last voyage. (8) Contributions due for general average. (9) Principal and interest due on obligations entered into by the master for the needs of the ship in the cases provided by article 509, (relating to bottomry,) and executed with the prescribed formalities. (10) Premiums for insuring ship and appurtenances for the last voyage, if the ship is insured for the voyage, or by a time policy, (*a tempo,*) and for steam-ships in regular trips, and insured by time policies, the premiums corresponding to the last six months: and, moreover, in mutual associations, the assessments and contributions for the last six months. (11) Compensation due to affreighters for default in delivering cargo, or for damage to cargo by fault of the master or crew during the last voyage. (12) Unpaid purchase price due the vendor. (13) Debts under No. 9 above, when not registered and recorded with diligence, (*trascritti ed annotati tardivamente,*) every other maritime security (*cambio marittimo*) on the vessel, and the claims for which the ship may have been pledged. In the concourse of several claims mentioned in No. 13, the priority is fixed by the date of registration and entry in the ship's register."

port, in completion of her obligations on the last voyage. (7) The bottomry and supply claims before the arrival of the vessel, in the inverse order of their several dates; the claims being independent, and not concurrent. (8) The master's lien for wages is recognized, as given by the Italian law; but it must be postponed, in case of a deficiency, to those liens which the master has himself contracted, and upon which he is personally responsible. As between him and the lienors to whom he is answerable, he cannot be allowed to withdraw the fund from the registry to their prejudice. *The Selah,* 4 Sawy. 40; *The Velox,* 21 Fed. Rep. 479. The bills being more than sufficient to absorb the residue, there will be nothing left for the master.

The necessary disbursements upon each libel or petition, in enforcing the above claims, will be added to each lien, and paid with it in the same order of priority.

