## THE CATSKILL.

### THE ST. JOHN.

(District Court, S. D. New York. July 8, 1899.)

1. COLLISION—MUTUAL FAULT—LIMITED LIABILITY ACT—DISTRIBUTION OF PROCEEDS.

   Where both vessels are held in fault for a collision which resulted in the loss of one vessel, and in the death and injury of passengers, and the loss of baggage and cargo, for which claims are filed, and the proceeds of the other vessel, surrendered under the limited liability act, are insufficient to pay all losses, the owners of the vessel destroyed are equitably estopped from claiming any part of the fund on account of the loss of the vessel until the claims of third parties, for which she is jointly liable, have been paid in full; and her insurers, who have paid the loss, are subrogated only to the rights of the owners.

2. SAME—CLAIMS FOR DEATH AND PERSONAL INJURIES.

   Claims for injury to the person and loss of life resulting from a collision are within the provisions of Rev. St. §§ 4284, 4285, which require the proceeds of the offending vessel, when surrendered, to be distributed among the claimants in proportion to their respective losses, and bar the claimants of other remedy; and the effect of those provisions is to make every admissible claim a statutory lien on the fund, and entitled to share therein pro rata, except as affected by equitable rights between the parties.

In Admiralty. Proceeding to limit liability on account of damages by collision. On distribution of proceeds of surrendered vessel.

De Forest Bros., George Holmes, and Harrington Putnam, for petitioners.

Benedict & Benedict, for the Catskill.

Leroy S. Gove, for insurers on cargo and baggage.

Shipman, Larocque & Choate, for insurers on Catskill.

J. Newton Williams, Leon Abbett, and G. Washbourne Smith, for claims for personal injuries and deaths.

BROWN, District Judge. Upon the decision in the above matter holding both the St. Johns and the Catskill to blame for the collision (92 Fed. 1010), and the report of the commissioner to assess the damages to the property and report the evidence as to personal injuries, several questions of interest have arisen which have been elaborately discussed by counsel. The Catskill was very nearly a total loss; and the proceeds of the St. Johns are less than half the total damage to the Catskill and her passengers and cargo.

| | |
|---|---|
| Her damages as reported by the commissioner amount to | $48,719 66 |
| For baggage lost | 1,071 78 |
| For cargo | 3,675 42 |

The last two items were paid to the different claimants by the owners of the Catskill, who received from the insurers on baggage and cargo the amount of the last-named items less $100 particular average; and the insurers now claim to recover the amounts thus paid to the owners.

1. Upon the evidence submitted for personal injuries and loss of life, I award the following sums, namely:

| | |
|---|---|
| To claimant Nellie McCree, age 23 | $ 3,553 85 |
| For the death of Mary L. Morris, age 46 | 3,000 00 |
| For the death of Maria MacDonald, age 75 | 685 00 |
| For the death of the boy A. M. Timmerman, age nearly 5 | 602 00 |
| To Hannah Klein, age 46 | 250 00 |
| To Leonard R. Miller, age 68 | 2,500 00 |
| To George F. Cook, age 28 | 227 50 |
| | $10,818 35 |

The above sums include the items for baggage of McCree and Cook not yet paid to them, and also the funeral expenses of the deceased, as proved.

The claim for the death of Mary L. Morris is made by her husband, Michael F. Morris, who has been appointed administrator. She left surviving two children, namely, May 16, and Fred 15, years old. The evidence shows that the husband for some time past had abandoned both wife and children, did not live with them, and contributed nothing to their support. The children were supported by the mother. By the statute of New Jersey, where they resided, the recovery for the death of Mrs. Morris would go to her husband. It is manifest, however, upon the evidence of his abandonment of his family, that he personally suffers but little, if any, pecuniary damage from his wife's death; and pecuniary damage is all that the statute allows. It is the children who really suffer pecuniary loss through their mother's death; and their father is legally bound to support them, though he is without responsibility for not doing so.

702 95 FEDERAL REPORTER.

Considering the proofs, therefore, as to the character, previous life and irresponsibility of the husband, the payment of the above allowance for the death of Mrs. Morris will not be made except upon condition that security, approved by this court, shall be first given for the application of three-fourths of the amount above awarded, both principal and interest, to the use, benefit and support of the two children above named.

The net proceeds of the sale of the St. Johns paid into the registry of the court in this proceeding are $23,944.52. From this amount after deducting the amount of $10,818.35 allowed for personal injuries and deaths, and $4,647.20 for baggage and cargo, there will remain the sum of $8,478.97 only, which is far less than sufficient to make good one-half of the loss on the part of the Catskill, even at her valuation of $48,719.66, as fixed by the commissioner. The insurers on the Catskill having intervened for their interest, after paying in full as for a total loss upon a valued policy of $20,000, have excepted to the commissioner's report, and contend that her valuation should have been fixed at from $65,000 to $75,000. In view, however, of the small sum remaining for distribution, it is wholly immaterial whether her value was $48,000 or $75,000 unless the owners of the Catskill and their insurers by subrogation, would be entitled to share pro rata in the whole fund with the other damage claimants.

2. The Catskill, having been held in fault in this proceeding as well as the St. Johns, is bound jointly with the latter to make good all damage claims; and any amount recoverable from the St. Johns which might otherwise be apportionable to her, on account of her own damage, must be held applicable to make good all outside claims for which she is bound equally with the St. Johns. As between these different claimants the owners of the Catskill are equitably estopped from withdrawing in this proceeding any part of the fund whereby the other damage claimants might lose any part of their demands. The Erinagh, 7 Fed. 235; The Olga, 32 Fed. 329, 331; The Eleanora, 17 Blatchf. 88, Fed. Cas. No. 4,335. This is a priority which falls within the scope of rule 55 of the supreme court in admiralty. The insurers stand by subrogation in the shoes of the owners of the Catskill, and can claim no more than her owners could claim.

3. It is further contended, inasmuch as by the law of the states of New York and New Jersey no liens are given for death claims, while a maritime lien does exist for the damages received by the Catskill, that this entitles the Catskill to a priority for her claim over the death claims. I cannot sustain this contention. Section 4284 of the Revised Statutes, providing for the distribution of the proceeds upon a surrender of the vessel, declares that the proceeds shall be distributed among the claimants "in proportion to their respective losses"; and no distinction is made between the different kinds of damage, whether to property or person. Injuries to person and loss of life are held to be claims within the scope of the statute (In re Long Island North Shore Passenger & Freight Transp. Co., 5 Fed. 599, 624; Butler v. Steamship Co., 130 U. S. 527, 552, 9 Sup.

Ct. 612), and recovery in personam against the owners of the vessel for loss of life is restrained upon the surrender of the vessel in proceedings under the statute (section 4285). It is evident, therefore, that the statute not only makes the fund derived from the sale of the vessel a fund applicable to all claims pro rata (see, also, rule 55 in admiralty), but that it bars all other remedy. The necessary effect of this is to make every admissible claim a statutory lien upon the fund. The fund must be distributed, therefore, according to the statute itself, i. e. pro rata among the claims arising from the collision (Butler v. Steamship Co., supra; The Maria and Elizabeth, 12 Fed. 627), saving any special equitable rights as between the parties.

4. No question arises here under the Harter act as respects the liability for baggage or cargo. The claims for both were settled and paid by the owners of the Catskill, who were reimbursed, as above stated. less $100 particular average, by the insurers on baggage and cargo, and their claim for so much of the loss has been duly proved. The amount of this claim will, therefore, be paid to these insurers, like the other damage claims, in priority to the claim for the damage to the Catskill.

5. A question being raised as respects the abandonment of the wreck of the Catskill to her insurers, in accordance with the suggestions on the argument, in case any surplus should be found remaining after the payment of the other claims, a further order of reference may be taken to report the evidence upon the question of abandonment and as to who is entitled to the balance remaining.