Petition of THE Diesel Tanker A. C. DODGE, INC., owner of the Motor Vessel A. C. Dodge and Spentonbush Fuel Transport Service, Inc., for exoneration from or limitation of liability.

No. 19971.

United States District Court
E. D. New York.

June 8, 1959.

Foley & Martin, New York City, by Christopher E. Heckman, New York City, for petitioners.

Haight, Gardner, Poor & Havens, New York City, by MacDonald Deming, Gordon W. Paulsen and Richard G. Ashworth, New York City, for claimant.

Freedman, Landy & Lorry, Philadelphia, Pa., and Greenhill & Greenhill, New York City, by Abraham E. Freedman and Marvin I. Barish, Philadelphia, Pa., for claimant Elliott.

BYERS, Chief Judge.

This matter is before the court on exceptions to the Commissioner's report

which was filed March 5, 1959. Argument was had on April 29th and the last brief was received on May 19th.

The petitioners in limitation challenge the findings and conclusions of the Commissioner because of the inclusion as part of the Michael's damages, of the total sum paid in settlement of claims made against that ship for damages occasioned by its fault in the collision of May 25, 1952, reported under the above title in D.C., 133 F.Supp. 510, affirmed 2 Cir., 234 F.2d 374, certiorari denied The A. C. Dodge, Inc. v. J. M. Carras, Inc., 352 U.S. 928, 77 S.Ct. 227, 1 L.Ed.2d 163.

It is to be understood that the said claims were against the Michael, and not against the petitioners.

The petitioners' brief contains the following:

"Since the Michael owner evidently claims to stand in the shoes of the holders of the death and injury claims which it has settled * * *" etc.

This court does not so understand. The owner of the Michael is not an assignee of any such claim. The ship has recognized its legal duty as a tort-feasor and the owner has paid money to those entitled thereto, in extinguishment of a legal liability to each. The Michael asserts that its damages embrace not only hull damage, but the total sum so paid in liquidation of claims which otherwise would have gone to judgment or decree.

It was stipulated before the Commissioner "that the amounts paid by Carras" (owner of the Michael) "in settlement of third party claims were reasonable and proper * * *."

The issue now raised will be seen to be one of law.

It is to be remembered that this was a both to blame case; that the Dodge was a total loss, and had no claims for pending freight. All that the Dodge could bring into this proceeding for the benefit of claimants against it was its cause for collision damages against the Michael.

That was the subject of suit in the U. S. District Court in Maryland, filed June 9, 1952.

The cargo insurers on the Dodge intervened, and that suit was stayed pending ultimate disposition of this cause. Thereafter that litigation was transferred to this court, and later was consolidated with this proceeding.

The hearings before the Commissioner were wisely brought into focus as the result of discussions between counsel and the Commissioner embodied in a stipulation as follows:

*Michael collision losses:*

a. Physical damage to the Michael and loss of her earnings $462,618.69,

b. Payments made in settlement of third party actions $610,360, plus an amount which was thereafter paid to the Dodge cargo interests (later determined to be $37,561.75), and an unstated amount to be paid to the personal representative of a decedent, Auguste Guerrin.

*Dodge collision losses:*

a. Total loss of the Dodge $800,000,

b. Incidental standby, wreck and salvage expenses $3,630.57,

c. Maintenance and cure, funeral, wage and personal effects claims $6,222.-42,

d. Such amount as they may now be called upon to pay to the damage claimant Elliott.

It was further agreed that the three remaining parties to the controversy are the respective owners of the two vessels, and "the innocent damage claimant Elliott;" she is the administratrix and widow of Captain Elliott of the Dodge, who lost his life on that ship.

The Commissioner has made findings 1 to 5, inclusive, as to the fair value of the Elliott claim which he fixes at $118,-500, for reasons which he has clearly and convincingly stated. His findings are not excepted to by Mrs. Elliott's proctor, nor by the Michael interests. The petitioners' brief in Point III contends that the award is excessive as to pain

and suffering, but this court does not agree. This finding is accepted.

It is the impact of this finding upon the Dodge interests which explains much of the argument made for the petitioners, in that the Michael settled the Elliott claim against that ship for $57,000. In the instrument of release the administratrix reserved her right of action against the Dodge.

The Commissioner has credited against the total of the Elliott claim as found by him, the said $57,000, leaving $61,500 as the amount of her claim in this proceeding against the Dodge.

The report contains an interesting and illuminating discussion under the heading, "What payment, if any, is to be made by J. M. Carras, Inc." (owner of the Michael) "into the Dodge limitation fund?"

The conclusion is that no such payment should be made. It is that conclusion to which the petitioners' exceptions are addressed, and diligently argued.

The figures involved may be thus capitulated:

Potential recovery by the Dodge against the Michael

| | | |
|---|---|---|
| ½ | Dodge hull damage | $400,000.00 |
| ½ | Sundry expenses | 1,815.28 |
| | Total | $401,815.28 |

The Michael damages'

| | | |
|---|---|---|
| ½ hull, and loss of earnings | | $231,309.34 |
| ½ damage payments | | 305,180.00 |
| Amount paid to Dodge cargo interests | | 37,561.75 |
| | Total | $574,051.09 |

The question for decision is whether the Michael's collision damages properly embrace the items paid to third parties under the circumstances previously stated.

The reasoning upon which the conclusion stated by the Commissioner is reached, is based upon analogy to decisions in other cases, of which none seems to have involved the precise circumstances presented here.

The core of the petitioners' argument is that the Michael as to the item of $305,180, is standing in the shoes of the third parties and should be treated in this proceeding as their assignee. Viewed in that light, it is urged to be inequitable to allow the Michael to avoid paying into the limitation fund, the difference between its hull damages etc. ($231,309.34) and the similar item of the Dodge ($401,815.28) or some $170,-505.94.

That theory need not be pursued as to the ultimate financial result which would be accomplished, unless the major premise of the petitioners is to be accepted, which is that the Michael is to be dealt with in two aspects, first in respect of her hull damage, and second as the assignee of and therefore as successor to the respective third parties. This court does not agree that such is the status of the Michael.

■ If the decisions in The North Star, 106 U.S. 17, 1 S.Ct. 41, 27 L.Ed. 91, The Chattahoochee, 173 U.S. 540, 19 S.Ct. 491, 43 L.Ed. 801, the opinion in Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318, and New York & Cuba Mail S. S. Co. v. American S. S. Owners' Mutual Protection & Indemnity Ass'n, 2 Cir., 72 F.2d 694, are understood, the Michael suffered a total damage made up of two elements which have been explained, because of the tort that it committed; that those elements taken together constitute one loss for the purpose of this proceeding, and should be so dealt with.

If the claims against the Michael were still in existence, it may well be that each claimant would have to take his place according to the theory expounded in the petitioners' brief, but that result cannot obtain in view of what has actually occurred. It is not this court's understanding that "* * * all death, personal injury and cargo claims, with the exception of the widow Elliott's claim, are presently owned by the Michael * * *."

Those claims have no present existence, de facto or de jure, and to argue otherwise is to ignore realities.

The discussion of this subject in the Commissioner's report and his review of the applicable decisions, is comprehensive and convincing, and his conclusion is approved.

■ The balance of the Elliott claim found to exist in her favor against the Dodge brings into question the bearing of the $60 per ton aspect of the Limitation Statute, 46 U.S.C.A. § 183, (b) and (f), and § 188. That is the real bite of the findings and conclusions now being examined, and explains the elaborate argument concerning the real constituency of the Michael's damages.

The question is whether the Dodge was a "tank vessel" as contemplated by subd. (f) of the first reference above. Seemingly Petition of Panama Transport Co. (The J. H. Senior), D.C., 73 F.Supp. 716, 717, is the only case in which the subject was discussed and decided.

The Commissioner has found that the Dodge was "the type of seagoing vessel contemplated by sub-divisions (b) and (f) of Section 183 U.S.C. 46" and the reasoning upon which he bases that conclusion is entirely persuasive to this court. The Dodge was by construction, certification, capacity and operation much more than a tank vessel "of the harbor or river type" to quote from the opinion in the Senior case.

The conclusion above quoted is sustained.

This means that the Dodge has not been shown to have met the requirements of the applicable statute, and since the limitation fund cannot pay the Elliott award, it (the fund) should be increased by the sum of $60 per gross tonnage of 1,147, namely the sum of $68,820. Conclusions 4 and 5 of the Commissioner to this effect have been carefully examined and are sustained.

■ With respect to the Elliott award, the Commissioner and all parties have construed the decision of this original cause on appeal to hold that there was no evidence of personal neglect on the part of Captain Elliott to account for the failure of the Dodge to blow a danger signal. That was the view of this court, but out of an abundance of caution, the decree provided that the Commissioner was to pass upon the *validity* of all claims. The purpose was to reserve for the hearing any testimony in addition to that presented on the trial, that possibly might throw light upon this subject. That was an extremely remote possibility, but was not to be ruled out. No such testimony was adduced before the Commissioner.

The final decision therefore does not mean that if such negligence had been susceptible of proof, it would have been disregarded, but merely that the evidence was silent on the subject whereby the Elliott award was not to be questioned on the merits.

The exceptions to the Commissioner's report as a whole are overruled, and the report in its entirety is confirmed.

Settle order.