Petition of THE Diesel Tanker A. C. DODGE, INC., Owner of the Motor Vessel A. C. Dodge
and
Spentonbush Fuel Transport Service, Inc., for Exoneration From or Limitation of Liability.

No. 355, Docket 26084.

United States Court of Appeals Second Circuit.

Argued June 17, 1960.
Decided Aug. 22, 1960.

Foley & Martin, New York City (Christopher E. Heckman, New York City, of counsel), for petitioners-appellants.

Haight, Gardner, Poor & Havens, New York City (MacDonald Deming, Gordon W. Paulsen, Richard G. Ashworth, New York City, of counsel), for claimant-appellee Carras.

Abraham E. Freedman, Marvin I. Barish, Freedman, Landy & Lorry, Philadelphia, Pa. (Greenhill & Greenhill, New York City, of counsel), for claimant-appellee Elliott.

Before WATERMAN, MOORE and HAMLIN,[*] Circuit Judges.

WATERMAN, Circuit Judge.

On May 25, 1952, at approximately 10:30 P.M., two laden tankers, the Michael and the A. C. Dodge, collided in the Delaware River at a point approximately forty miles south of Philadelphia. The collision caused an explosion aboard the Dodge and that vessel then burst into flames and sank within five minutes. The Michael, although she sustained great damage, was able to save herself. The collision caused the death of eleven men, including eight of the nine men aboard the Dodge.

On November 24, 1952 appellants, respectively the owner and operator of the Dodge, filed a petition for limitation of liability, 46 U.S.C.A. § 181 et seq., in the Eastern District of New York. Prior thereto, on June 9, 1952 appellants instituted a libel against the Michael in the District of Maryland, the Michael having proceeded to Baltimore for repairs following the accident. The Maryland libel was eventually transferred to the Eastern District of New York and consolidated with the limitation proceeding. On September 30, 1955 Judge Byers handed down a decision in the limitation proceeding, reported at 133 F.Supp. 510, holding that the Dodge was entitled to limit liability. Judge Byers also held that although the fault of the Michael far outweighed that of the Dodge, the Dodge and the Michael were both to blame for the collision. This court affirmed both these holdings 2 Cir., 1956, 234 F.2d 374, certiorari denied The A. C. Dodge, Inc. v. J. M. Carras, Inc., 352 U.S. 928, 929, 77 S.Ct. 227, 1 L.Ed.2d 163. We stated that the division of damages, half-and-half, would be irrational and unjust here in view of the Michael's greater respon-

[*] Of the Ninth Circuit, sitting by designation.

sibility for the collision. Nevertheless, we saw no escape from such an apportionment of damages, 234 F.2d 374, 377. The cause was then referred to a Commissioner to make findings as to the amount of the limitation fund and the persons entitled to participate therein. The Commissioner concluded that: (*a*) Mrs. John Elliott, as administratrix and as widow of the master of the Dodge at the time of collision, was the sole party entitled to participate in the fund; (*b*) Mrs. Elliott was entitled to recover $61,500; (*c*) J. M. Carras, Inc., the owner of the Michael, had no obligation to pay any portion of this $61,500; (*d*) the Dodge was a "seagoing vessel" within the meaning of 46 U.S.C.A. § 183(b), and hence was required to satisfy Mrs. Elliott's claim in full because the $61,500 amount was less than $60 per ton of the Dodge's tonnage. After exceptions to the Commissioner's report had been filed Judge Byers confirmed the report in its entirety, 173 F.Supp. 906. This appeal by the Dodge interests challenges the Commissioner's conclusions that we have labeled above (*b*), (*c*), and (*d*).

### I

■ Unlike the Dodge, the Michael did not elect to limit liability. The Michael interests, appellee J. M. Carras, Inc., settled with the owners of the Dodge cargo and with all the death and personal injury claimants. Of these claimants only Mrs. Elliott reserved her rights against the Dodge. The Commissioner held that the value of Mrs. Elliott's claim was $118,500, and, after deducting therefrom $57,000 paid by the Michael in settlement, the Dodge's liability to her was determined to be $61,500. Appellants contend that the $118,500 amount was excessive. In particular, they object to the award of $5,000 for conscious pain and suffering. Without going into detail, there was credible and uncontradicted testimony indicating that Elliott survived the immediate impact of the collision but was thereafter seen enveloped in flames just prior to the ship's sinking. We hold that the

Commissioner's evaluation, confirmed by the District Court, was not clearly erroneous, and hence is to be affirmed. General Admiralty Rule 43½, 28 U.S.C.A.; Ozanic v. United States, 2 Cir., 1948, 165 F.2d 738, 742. Other alleged errors with respect to the evaluation of Mrs. Elliott's claim have not been raised with sufficient specificity to permit our consideration of them.

### II

■ The Commissioner held that the Michael was under no obligation to pay any portion of Mrs. Elliott's recovery. Appellants concede that, even with the inclusion of the $61,500 Elliott claim against the Dodge, the losses of the Michael (including hull damage, loss of earnings, and amounts expended in settlements of third party claims) exceed those of the Dodge by more than $300,000. We had thought it settled that in a collision where both vessels are at fault the losses of each vessel are to be added and a decree entered in favor of the vessel suffering the greater loss in an amount equal to one half the difference in the sum of the losses sustained. The North Star, 1882, 106 U.S. 17, 20, 1 S.Ct. 41, 27 L.Ed. 91. Liability imposed as a result of third party claims for property damage or personal injury or death is properly included by a vessel in computing its losses. The Albert Dumois, 1900, 177 U.S. 240, 256–257, 20 S.Ct. 595, 44 L.Ed. 751; The Chattahoochee, 1899, 173 U.S. 540, 549–555, 19 S.Ct. 491, 43 L.Ed. 801. Thus it is difficult to sustain the proposition that the Dodge, by virtue of its election to limit liability, insulated from having to pay the Michael one half of the difference between its loss and the Michael's loss, should be permitted to require the Michael to pay some portion of the Dodge's obligation to Mrs. Elliott.

We find that appellants' argument in support of this proposition is obscure, and, to the degree that we understand it, unconvincing. The Michael had previously entered into a settlement with Mrs. Elliott for an amount almost equal to the

amount appellants will be required to pay if the decision below is affirmed. Thus we are unable to detect any strong equitable support for appellants' position.

Appellants argue that unless we require the Michael to pay a portion of the Elliott claim—and we are left uncertain as to the amount appellants would have the Michael pay—"innocent" third party claimants in future cases will be unable to obtain proper recoveries. Apparently appellants would limit any departure from The North Star to cases where one vessel does not elect to limit liability and third parties have claims against one or more of the vessels involved in the collision. In view of the fact that the limitation fund here is sufficient to satisfy all third party claims in full, even if the fund is to be calculated according to the formula set forth in The North Star, we could refuse consideration of appellants' argument until we have a case before us where the fund so computed is not sufficient. Nevertheless, we find that the errors in appellants' reasoning are so clear that there is no point in deferring comment. In a both-to-blame collision, third party personal injury and death claimants have causes of action against either vessel. Thus the situation envisaged by appellants will occur only when such claimants have accepted payment by way of settlement from the non-limiting vessel. To require that the non-limiting vessel thereafter pay further moneys to these claimants would constitute an improper nullification of valid settlements. Appellants also ask us to consider the effect affirmance would have upon a situation where the cargo carried by the non-limiting vessel is not entitled to recover against that vessel under the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq. While these cargo interests may obtain a less-than-full recovery if the

limitation fund of the non-carrying vessel is insufficient, a requirement that the carrying vessel make up the deficiency would not be in keeping with the objectives of the Act.

In summary, appellants appear to ask us to depart from venerable precedent in order that we may be free in the future to reach improper results. We refuse to do so.[1]

### III

Appellants' final contention is that the court below erred when it approved the Commissioner's conclusion that appellants be required to increase the limitation fund up to an amount equal to $60 per ton of the Dodge's tonnage as required by 46 U.S.C.A. § 183 (b). Only as to a "seagoing vessel" may the owner be required so to increase a limitation fund in order to satisfy death and personal injury claims. 46 U.S.C. § 183(f) states that the term "seagoing vessel" is not to include "tank vessels." This is hardly a felicitous expression, since it is by no means clear that "tank vessels" and "tankers" are synonymous. In the one previous case construing the term "tank vessels," Petition of Panama Transport Co. (The J. H. Senior), D.C.S.D.N.Y.1947, 73 F.Supp. 716, it was held that "tank vessels" referred only to tankers of "the river or harbor type." This holding accords with the well documented conclusions to be found in 3 Benedict, Admiralty (6th Ed.) § 475 at p. 321. The correct interpretation of 46 U.S.C.A. § 183(f) is not free from doubt. However, we think that ambiguous language in statutory provisions relating to limitation of liability should be resolved in favor of interpretations increasing the instances where full recoveries from the limiting vessel are possible. Therefore, we accept the in-

---

1. Appellants rely upon The Catskill, D.C. S.D.N.Y.1899, 95 F. 700, 702. This reliance is unavailing. As is made clear in the other reported decisions in the same case—In re Central R. R. of New Jersey, D.C.S.D.N.Y.1899, 92 F. 1010; The St. Johns, D.C.S.D.N.Y.1900, 101 F. 469—the portion of the Catskill opinion appellants rely on was a holding that, in a both-to-blame collision, the vessel sustaining the heavier losses is not entitled to share in the other vessel's limitation fund on an equal footing with third party claimants. The result we reach here is entirely consistent with the Catskill holding.

terpretation found in The J. H. Senior, supra. The Commissioner's finding of fact that the Dodge was not a tanker "of the river or harbor type" is not a clearly erroneous finding, and should be affirmed.

Affirmed.