CENTRAL TRUST CO. OF NEW YORK v. RICHMOND, N., I. & B. R. CO.
STONE v. PRYSE et al.      TRIMBLE et al. v. HAZARD
POWDER CO. et al.      WHEELER v. SAME.

(Circuit Court of Appeals, Sixth Circuit.  December 4, 1900.)

No. 818.

1. ATTORNEY AND CLIENT—LIEN OF ATTORNEY.

Under Ky. St. § 107, which gives attorneys a lien on any judgment recovered by them "for the amount of any fee which may have been agreed upon by the parties," attorneys employed to establish a claim and a mechanic's lien therefor, under an agreement that if they succeeded they should receive a stipulated fee, which was reasonable in amount in view of the sum involved, who after long litigation established both the claim and lien, are entitled to a lien on the proceeds for the full amount of the stipulated fee, as against persons to whom their client had made partial assignments of his claim, and who appeared in the case only after it had been established, to assert their rights under their assignments, notwithstanding the amount realized was sufficient to pay only a part of the sums assigned; and it is immaterial that some of the assignments were made before the attorneys were employed, where the assignee knew of such employment and made no objection thereto.

2. EQUITY—DISTRIBUTION OF FUND IN COURT—FILING OF CLAIMS.

Where a person not a party to a suit holds two distinct and separate claims against property sold therein, the fact that he presents them for allowance against the fund realized from such property at different times does not constitute a splitting of a single demand, which should debar him from the right to prove his second claim.

3. SAME—TIME FOR PRESENTING CLAIMS.

Persons who are not parties to a suit, but who have claims against property which must be sold therein, may properly be permitted to come in at any time before the proceeds of such property have been distributed; and such a person should not be charged with laches to defeat his claim because it is not filed until after an interlocutory decree for sale of the property has been entered, where no prejudice has resulted to other parties by reason of the delay; nor should one be denied the right to establish his claim because such decree undertook to adjudge certain fixed amounts to be paid from the fund to parties then before the court, since such decree was not final in respect to the matter of distribution, but remained subject to such modifications as might be necessary to permit other legitimate claims to be asserted at any time before actual distribution.

Cross Appeals from the Circuit Court of the United States for the District of Kentucky, at Louisville.

John B. Baskin, for Thomas M. Pryse and others.
Kennedy Helm, for Hazard Powder Co.
H. L. Stone, for Stone & Sudduth.
George Wessinger Smith, for Trimble Bros.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge. These are appeals taken by interveners in the case first above entitled from the decree of the circuit court directing the distribution of funds in the hands of the court arising from a sale made upon the foreclosure of a mortgage given by the railroad company, the defendant in the principal case, to the trust company, for the purpose of securing an issue of bonds. The case has been here on former appeals, involving other questions. 31 U. S. App. 675, 15 C. C. A. 273, 68 Fed. 90, 41 L. R. A. 458; 31 U. S. App. 704, 15 C. C. A. 289, 68 Fed. 105. In the case among the appeals reported in the last of the above citations was one by L. F. Mann, who, though not an original party, had been permitted in the court below to intervene and file a cross bill and answer setting up a lien under the statute of Kentucky for labor and materials furnished in the construction of the railroad, besides interest. By the decree of the circuit court his claims had been allowed in the amount of the principal thereof, but he had claimed interest from the date of the filing of his lien, and this was refused. From the refusal to allow interest, he appealed. This court was of opinion that he was entitled to recover interest as claimed, and directed that the decree be modified so as to include it. The case was remanded to the circuit court, and upon receiving the mandate that court, on July 25, 1895, entered a decree for foreclosure and sale of the road, in which, among other things, the claim of Mann was allowed at the sum of $22,129.68, and a lien upon the expected fund therefor was admitted. But the decree went on to declare that certain partial assignments of Mann's claim had been made by him to parties, and in amounts enumerated, and ordered that out of the sum allowed to Mann the several amounts assigned should be paid to the assignees, "subject, however, to the prior lien of Stone & Sudduth for legal services in behalf of said Mann herein." After several fruitless attempts to sell the road, and on the 1st day of May, 1899, a sale was effected at the price of $301,000; and this sale was subsequently confirmed, and the proceeds were brought into court. All the present appeals relate to the distribution of the sum realized on the Mann claim.

1. On the 30th of October, 1897, Stone & Sudduth filed a petition alleging that, prior to the filing of the answer and cross bill of Mann above mentioned, they had entered into a contract with him whereby they undertook the prosecution of his claim in the circuit court, and, if necessary, upon appeal in the circuit court of appeals, in consideration of which Mann agreed to pay them for their professional services, if they succeeded in establishing the claim, the sum of

$2,200, and in the event that the case should be carried to the circuit court of appeals, the further sum of $1,000, making in all in the latter event $3,200. Their petition further stated that they had performed their part of the contract, and had succeeded in establishing the claim finally upon appeal to the circuit court of appeals, and they prayed that a prior lien be given them upon the portion of the fund in court belonging to Mann's claim over all other parties. The matter of this petition was referred to a commissioner to report "(1) by whom and when Stone & Sudduth were employed as counsel herein; (2) what services were rendered herein by them as such; (3) whether they rendered any services for or at the request or in the interest of any other person or party interested in the questions now involved." The commissioner took testimony and reported that he found that Stone & Sudduth were employed as counsel in the early part of January, 1892; that they filed for him his answer and cross bill on February 1, 1892, and thereafter prosecuted the claim with diligence and vigor through a long and tedious litigation to its final establishment; that they were not employed by any other party, nor represented any other interest associated with the Mann claim, but that, in view of the small percentage which would be realized upon Mann's entire claim, a reasonable sum to allow Stone & Sudduth for their services would be $1,900. He reported the testimony which had been submitted with reference to the amount which Mann agreed to pay Stone & Sudduth; and for his omission to find that they were entitled to recover for their services, what the testimony showed Mann had agreed to pay for them, they excepted. The report was confirmed, except in respect to the amount which would be a reasonable compensation. This was fixed at $1,000, the smallest estimate which had been given by the witnesses. The judgment of the court in this regard was, as appears from its opinion, greatly influenced by the small amount realized on the Mann claim ($7,364.78) in proportion to the amount of the claim, which was three times that sum; the amount realized being very much short of enough to pay all the sums claimed by counsel and by assignees. The exception to the commissioner's report was overruled. From the determination of the court fixing their services at $1,000 only, Stone, who is the survivor of his firm,—Sudduth having died pending the suit,— appeals, and assigns for error that the court refused to allow the sum of $3,200 in accordance with their contract with Mann. The contract which is alleged in that petition is sufficiently proven. The questions raised by counsel who resist the claim are in respect of the law assuming the contract to have been made as stated. As has been mentioned, the decree of the circuit court made in July, 1895, upon the reception of the mandate of this court, declared a priority in favor of this claim, but it did not fix the amount. For a reason presently to be stated, we shall consider the claim with respect not only to its amount, but also in respect to its validity. Counsel for some of the appellees contend that as Stone & Sudduth were not then before the court as parties, and there was then no issue or controversy respecting their claim, the decree was in that regard upon a matter not before the court, and was therefore beyond the power

of the court and void. But, whether void or valid, the matter was still subject to the control of the court, and open to changes or modification if the court should conclude that equity required it. The decree was final for all the purposes of the sale, but was not final in respect to the disposition of the proceeds. A decree may be final for the purposes of an appeal, but not final in that it has terminated the control of the court over the case. The statute of Kentucky concerning liens of attorneys in force when the contract in question was made (section 107, Ky. St.) reads as follows:

"Attorneys at law shall have a lien upon all claims or demands, including all claims for unliquidated damages, put into their hands for suit or collection, or upon which suit has been instituted, for the amount of any fee which may have been agreed upon by the parties, or, in the absence of such agreement, for a reasonable fee for the services of such attorneys; and if the action is prosecuted to a recovery, shall have a lien upon the judgment for money or property which may be recovered—legal costs excepted—for such fee; and if the records show the name of the attorney, the defendant in the action shall have notice of the lien."

It cannot be doubted that within the meaning of this statute the claim of Mann was a claim put into the hands of his attorneys for enforcement by suit. And it seems to us it was put into their hands by one competent to enforce it. It is urged that Mann, after his partial assignments, stood in the relation of a trustee for the assignors, and we are referred to cases in which it has been held that the cestuis que trustent are not the clients of the counsel employed by the trustee; that the counsel must look to the trustee for his compensation, and the question of its reasonableness will be open upon the settlement by the trustee of his accounts. And it is further urged that the case is within the operation of another rule,— that, where one party to a suit employs counsel to take care of his own interests, no liability to compensate such counsel rests upon another party from the fact that the results accomplished by their endeavors inure incidentally to the benefit of such other party. But, in our opinion, neither of these rules applies to the case before the court, for several reasons. In the first place, the Kentucky statute gives a direct and express lien. Then, again, these assignees must work out their interests through the lien, which is incident to the Mann claim. If Mann had sued in an action at law to recover the debt for which his lien was given, there would have been no question of the case being within the statute. We can perceive no reason for any distinction when the proceeding is in equity to enforce the lien given for its payment, and the statute makes no distinction. Partial assignments of a claim or fund belonging to the assignor are not recognized at law. Suit to enforce the claim must be brought by the assignor. The reason is that the cause of action is entire and cannot be split up. After the fund is established by judgment, the court in most jurisdictions exercises more or less control by the adoption of equitable principles for the protection of assignees; but until then it looks only to the assignor, who remains the holder of the legal title. The assignment passes only an equitable interest, and in a court of equity the original claim is primarily the subject of inquiry, and must first be established. The separate rights of the

assignees are attended to in the distribution, a branch of the equitable jurisdiction beyond the powers of a court of law. The rights of the assignee are connected by a vital thread with those of the assignor, and are dependent upon them. They cannot be established except through the vindication of the latter. The situation is well illustrated by what has taken place here. The claim of Mann was established in his own name in its entirety by his counsel. Afterwards the assignees came into the case, not to litigate the original claim, but upon the distribution of the fruits, for their own protection. It is altogether unlike the case where one of two parties having independent claims reaps an incidental advantage by the disposition of the claims of another.

The objection is urged in behalf of Pryse, who is one of the assignees, that his assignment antedates the employment of Stone & Sudduth by Mann. But, for the reasons above stated, we think this makes no difference. Moreover, it appears that Pryse was informed of Mann's contract with the counsel, and he approved it. He must be presumed to have known of the provisions of the statute according a lien, and he cannot now complain when it is sought to enforce it. The assignees took no steps for the establishment of the main lien, and were content that Mann should enforce it. If the contract had been tainted with actual fraud towards the assignees, or was so unreasonable as to operate unjustly upon those holding prior assignments of which the counsel had notice, doubtless they might be relieved. But actual fraud is not alleged or claimed. It is, however, claimed that the contract was unreasonable in the amount stipulated, and oppressive upon the assignees. This might seem to be so if we tested the matter by the amount eventually realized. But at the time when the agreement was made all parties supposed the claim was good for its face value, and that enough would be realized to meet all demands upon it. The result has been a disappointment. The contract was to make the compensation for the establishment of the claim. That has been accomplished, and we can see no valid ground for ignoring the contract in the fact that the fruits of it are not all that was expected. We think, therefore, that the court erred in failing to give effect to the contract and the lien, incident to the employment. The appeal of Stone is therefore sustained.

2. It appears that Trimble Bros. had two claims,—one derived under an assignment by Mann of a part of his claim to Charles M. Pryse, who was, as already stated, an assignee of Mann. Another was under a different and distinct assignment from Mann to themselves. The first was presented before the decree of July 25, 1895, and was therein allowed. The second was for $680.60, under an assignment bearing date December 31, 1891. It was not presented until May 29, 1899. From these dates it is seen that the presentation of the claim was after the decree last mentioned, and before the fund realized from the sale was brought into court. The court rejected this claim in its order for distribution, and from this Trimble Bros. have appealed. The grounds upon which this claim was disallowed were stated by the court, as appears from the record, to be these: First, because it was not held by assignment from

Mann; second, because Trimble Bros. had been guilty of inexcusable delay in presenting it, the way having been previously open to them when they presented their prior claim, which, with this, it was said, were parcels of the same demand, which they ought not to be allowed to assert piecemeal. The first ground appears to have been a misapprehension of the fact. The record shows that it was one of the successive partial assignments made by Mann to Trimble Bros. The second reason above stated, we think, is not sound. The claim was not parcel of an entire claim of which the one previously made was part. They were separate and distinct claims for different sums, made at different times, and had, so far as we can see, no relation to each other. They appear to have been as distinct as if they had been assigned to different parties. The only consequence of the claim in question not having been presented with the other, which occurs to us, is the possible bearing it might have on its good faith and validity. But the claim seems to be clearly proven, and its existence in point of fact is not controverted. With respect to the laches imputed, it is proper to observe that it is a common though not universal practice for those who are not parties, but who have claims upon the property which must be sold to accomplish the objects of the suit, to come in after the interlocutory decree has been passed, and set up their claims before the question of distribution is settled. The time between those dates when the intervention should be made is ordinarily a matter of convenience merely, and if no rights have accrued by reason of delay it is unimportant. Nothing of that kind appears in the present case, and, as the claim was presented before even the fund had been brought in, we think it should not have been rejected because it was not brought forward at an earlier date. Neither Stone & Sudduth nor Trimble Bros. nor Price McGuire had presented their claims when the decree of foreclosure in 1895 was entered. They were not, therefore, before the court for adjudication. The uniform current of authority is in accord upon the propositions just stated. And the rule has been extended to cases where the distribution has been actually made if the owner of the claim has not been inexcusably negligent and is otherwise free from fault. Ex parte Howard, 9 Wall. 175, 19 L. Ed. 634; Williams v. Gibbes, 17 How. 238, 15 L. Ed. 135. The law upon this subject was well and fully stated by Judge Morrow, at the circuit, in The Elmbank (D. C.) 72 Fed. 610. The court also seems to have laid some stress upon another objection stated below as made to the claim of Wheeler, administrator of McGuire, namely, that by the decree of the court made July 25, 1895, certain fixed amounts were decreed to be payable from the fund belonging to the Mann claim to persons therein enumerated, and that other claims could not be admitted to disturb those allowances. Not only was that decree not final in respect to the matter of distribution, but it was, in the nature of things, subject to such modifications as might be necessary if legitimate claims upon the fund might still in due course be established. In substance and effect it merely established the basis on which the claims allowed would be entitled to have their proportions when distri-

bution should eventually be made. The objection which these parties make to the Stone claim, based upon the fact that their claim is under an assignment prior to the employment of Stone & Sudduth, is disposed of by what we have said in reference to a like objection in dealing with that claim. ·

3. The claim of Wheeler, as administrator aforesaid, rests upon another partial assignment, made by Mann to McGuire, of the sum of $671.75, on December 22, 1891. This claim was filed October 4, 1895, and had, therefore, been on file several years before the foreclosure sale took place. It was rejected upon the ground that there had been laches in presenting it, and that it was excluded by the operation of the decree of July 25, 1895. We have already considered this objection on the appeal of Trimble Bros., and held that it was not tenable. As there appears to be no other objection to this claim, it should have been allowed. This appeal is also sustained.

It appearing that none of the assignees of Mann were purchasers for value, the question of notice of the assignments in fixing the order of priority does not arise, and they must take in the order of the dates of their respective assignments, so far as respects those appealing. As to the others not appealing, we do not disturb the order of the circuit court. The order appealed from must be reversed upon the appeals of the several appellants in respect of their claims, and the cause remanded, with directions to allow them.