FEDERAL INS. CO. et al. v. DETROIT FIRE & MARINE INS. CO. et al.

(Circuit Court of Appeals, Sixth Circuit.  January 7, 1913.)

No. 2,226.

1. INSURANCE (§ 606*)—SUBROGATION OF INSURER—MARINE POLICIES.

The right of an insurer of a vessel which has paid a loss resulting from collision to subrogation to the rights of the owner in any damages recovered from the other vessel in collision arises in equity from the nature of the insurance contract as a contract of indemnity, and no provision therefor in the policy is necessary.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1504–1511, 1514–1516; Dec. Dig. § 606.*

Subrogation of insurer under assignment of rights insured, see note to The Livingstone, 65 C. C. A. 615.]

2. INSURANCE (§ 606*)—SUBROGATION OF MARINE INSURER—SUIT FOR COLLISION—RIGHTS OF NONJOINING INSURERS.

Certain of the insurers of a vessel sunk in collision, after paying their share of the loss, refused to join with others in authorizing a suit against the other vessel in collision or to share in the expense of such suit. A number of those so refusing were insurers also of the libeled vessel, while others were not, and those who were contributed to the defense of the suit. *Held*, that they did not thereby lose their right to their share of the damages recovered, which was at least equal to that of the nonassenting insurers, who were interested only in the sunken vessel.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1504–1511, 1514–1516; Dec. Dig. § 606.*]

3. INSURANCE (§ 606*)—SUBROGATION OF MARINE INSURER—SUIT FOR DAMAGES—DISTRIBUTION OF RECOVERY.

Where the libel in such suit was filed by the owner of the vessel, in its own behalf and as representing the insurers, for an amount exceeding the insurance, but, owing to a division of damages, the recovery was less than the insured value, the suit with respect to the amount recovered was wholly of a representative character, and libelant holds the entire sum as trustee.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1504–1511, 1514–1516; Dec. Dig. § 606.*]

4. INSURANCE (§ 606*)—SUBROGATION OF MARINE INSURER—SUIT BY OWNER FOR BENEFIT OF INSURERS—RIGHT OF NONASSENTING INSURERS TO SHARE IN RECOVERY.

A steamship sunk in collision, her cargo and freight, were underwritten by 16 insurance companies in varying amounts, and each paid its share of the loss. The owner, at the request of some of the insurers, addressed letters to the others, stating that it was about to libel the other vessel in the collision, and asking if they desired the suit brought and would share in the expense and risk. It further stated that the suit would be brought in its name for the entire damage; that, if unsuccessful, the interests not authorizing it would not be asked to contribute to the expense, but, in case of recovery of all or part of the damage, the interests authorizing it would claim the right to deduct the expense of the litigation before division of the sum recovered. Eight of the insurers assented to the suit, and 8 did not. Some of the latter were also insurers of the libeled vessel and contributed to the defense of the suit. The libel averred that it was filed by libelant as owner, and "for the benefit of its insurers," cargo owners, and crew. The loss proved largely exceeded the amount of the insurance; but the suit resulted in a decree finding both vessels in fault and dividing the damages, the amount recovered by libelant being less than the insurance. *Held*, that such recovery, which under the libel

covered all interests, inured to the benefit of all the insurers ratably, and not of those only who gave their assent to the suit, and that each, whether assenting or nonassenting, was entitled to its share thereof after deducting the costs and expenses of suit.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1504–1511, 1514–1516; Dec. Dig. § 606.*]

5. INSURANCE (§ 606*)—SUBROGATION OF MARINE INSURER—DISTRIBUTION OF FUND RECOVERED—INTERVENTION BY INSURERS.

A marine insurer, claiming by subrogation an interest in a fund recovered by the insured in a suit for collision, may intervene and assert such claim at any time before the fund is distributed.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1504–1511, 1514–1516; Dec. Dig. § 606.*]

Appeal from the District Court of the United States for the Eastern District of Michigan; Henry H. Swan, Judge.

Suit in admiralty for collision by the Hawgood Transit Company, owner of the steamer Etruria, against the Mesaba Steamship Company, owner of the steamer Amasa Stone. See 166 Fed. 697, 92 C. C. A. 369. From a decree of distribution, giving the Detroit Fire & Marine Insurance Company and others priority, the Federal Insurance Company and others appeal. Reversed.

Hermon A. Kelley, of Cleveland, Ohio (Hoyt, Dustin, Kelley, McKeehan & Andrews and I. L. Evans, all of Cleveland, Ohio, of counsel), for appellants.

F. S. Masten, of Cleveland, Ohio, F. H. & G. L. Canfield, of Detroit, Mich., and Harvey D. Goulder, of Cleveland, Ohio, for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. The issues in this case concern the distribution of money recovered by reason of a collision between the steamer Etruria (owned by the Hawgood Transit Company) and the steamer Amasa Stone (owned by the Mesaba Steamship Company), which occurred on Lake Huron June 18, 1905. The question of liability was disposed of by this court in Hawgood Transit Co. v. Mesaba S. S. Co., 166 Fed. 697, 92 C. C. A. 369, and the facts there involved appear in the report of the case. The collision resulted in the total loss of the Etruria, with her cargo and freight and the personal effects of her crew, and also in injury to the Stone. It was held that both vessels were in fault, and the damages were divided. Stated in a general way, the present controversy began when the one as to liability ended.

At the time of her loss, the Etruria was insured in 16 companies holding risks in varying sums amounting to an agreed valuation, and the shipowner was paid such value by the insurers. The cargo and pending freight were separately insured by 2 of these underwriters, and these losses were likewise paid. Thereupon, as it now appears, 7 of these insurers (including the insurers of cargo and freight) requested, and 8 of them declined to request, the owner of the Etruria to bring the suit, which resulted in settling the question of liability,

and, while the case was pending on appeal in this court, the remaining insurer gave its assent to the libel suit. The sums contributed by all the companies in payment of the losses, whether for hull, cargo, or freight, as also the amount of the fund for distribution, definitely appear in the record and are not in dispute.

The present issues were made up by intervening petitions of the nonconsenting insurers, answer of the original libelant, petitions of the requesting insurers, and a stipulation of facts, filed in the original cause after decree was entered below upon the mandates of this court. ·By the decree now in question, the fund was ordered to be distributed in substance as follows: (1) To libelant, the Hawgood Transit Company, its costs and expenses; (2) to such of the insurance underwriters as joined in the request to bring the suit, the amounts of insurance severally paid by them on account of cargo and hull, with interest; (3) to libelant, for the benefit of the crew, the amount of their losses; (4) after payment of such sums, which were declared to be "first claims and liens upon the damages," the balance proportionately to the nonrequesting underwriters. By this distribution the first three classes would each be paid in full, with interest; but the fourth class would receive only a comparatively small percentage of the sums they respectively paid as losses on the Etruria. The nonrequesting insurers appealed to this court, and the requesting companies are here as appellees; and, for reasons appearing later, the names of all are given in the margin.[1]

This controversy relates mainly to the second and fourth of the foregoing paragraphs. Of the appellants, the Firemen's Fund Insurance Company, the London Assurance, and the Union Insurance Society were insurers only of the Etruria. The other appellants were insurers of both vessels, but of the Stone in larger sums, respectively, than they were of the Etruria, except only the New Zealand Insurance Company, which had something over $700 more on the Etruria than on the Stone. It should be noted, too, that of the appellees, the Western Assurance Company and the British America Assurance Company were insurers of the Stone, as well as the Etruria; both having less insurance on the Etruria than on the Stone, even though the insurance of the former upon the pending freight of the Etruria be included. The other appellees had underwritten the Etruria alone.

Before filing its libel against the Stone, the owner of the Etruria caused notice to be given to all of its insurers that, upon request of some of them, it was about to proceed against the Stone, and also caused request to be made of all of them to notify it whether they

---

[1]Appellants are Federal Insurance Company, Firemen's Fund Insurance Company, London Assurance, Underwriters at Lloyds, Union Insurance Society of Canton, Limited, Indemnity Mutual Marine Assurance Company, Limited, Royal Exchange Assurance, and New Zealand Insurance Company. Appellees are Detroit Fire & Marine Insurance Company, Western Assurance Company, Ætna Insurance Company, British America Assurance Company, Providence Washington Insurance Company, Northwestern National Insurance Company, Commerical Union Assurance Company, and St. Paul Fire & Marine Insurance Company.

desired this to be done and were willing to share the risk and expense thereof, stating among other things:

"The claim will be made against the Stone in the name of the insured for the entire damage, whether all of the insurers of the Etruria authorize the litigation or not. In the event litigation shall result in the Etruria being held solely at fault, the Etruria interests not authorizing the proceedings will not be asked to contribute to the expense incurred in prosecuting the claim; if, however, the action shall result in the Stone being held solely at fault or in a division of damages, the Etruria interests authorizing the proceedings will claim, before returning any part of the recovery to the Stone, or accounting to the Etruria interests not authorizing the proceeding for the share of the recovery which would otherwise fall to them, the right to deduct the expense of the litigation."

To this an answer was made by one of appellants (the Federal Insurance Company) that it had insured 17½ per cent. of the value of the Stone as against its insurance of 9 per cent. of the value of the Etruria, and that if the owner of the Etruria made claim for her entire value, and the Federal, as insurer of the Stone, were required to pay 17½ per cent. of the Etruria's value, it "would expect to receive, as insurer of the Etruria, 9 per cent. of the recovery without deduction for expenses." It does not appear that the other appellants made specific answer to the request. Both the appellants and appellees having risks on the Stone contributed to the expense of her owner in the libel proceeding.

[1] It appears by stipulation that the "Etruria was an actual total loss, and that no abandonment was made or was necessary"; and so far as this involves a legal conclusion, it is rightly admitted in the argument for appellees. Hall & Long v. Railroad Co., 13 Wall. 367, 371, 20 L. Ed. 594; The St. Johns (D. C.) 101 Fed. 472. Since the insurers of the Etruria admittedly paid her owner as for a total loss, it results that such insurers were, to the extent of the losses severally paid by them, subrogated to rights corresponding to those of the owner in any damages recoverable by it against the Stone. This is properly admitted. The Potomac, 105 U. S. 630, 634, 26 L. Ed. 1194; Liverpool Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 462, 9 Sup. Ct. 469, 32 L. Ed. 788; Mason v. Marine Ins. Co., 110 Fed. 452, 49 C. C. A. 106, 54 L. R. A. 700 (C. C. A. 6th Cir.); Travelers' Ins. Co. v. Great Lakes Engineering W. Co., 184 Fed. 429, 430, 107 C. C. A. 20, 36 L. R. A. (N. S.) 60 (C. C. A. 6th Cir.); The St. Johns (D. C.) 101 Fed. 472, 473.

Most of the insurers obtained subrogation receipts from the owner upon paying their shares of its loss, some of which in terms provided for full subrogation, and others "to the extent only and as provided in" the policies, although the policies do not appear to have contained any provision for subrogation. However, we do not regard this as important, nor do counsel for either side, because it is settled that such provisions are not necessary. The right of subrogation arises from the very nature of the contract of insurance as a contract of indemnity. Phœnix Ins. Co. v. Erie Transportation Co., 117 U. S. 312, 321, 6 Sup. Ct. 1176, 29 L. Ed. 873; Liverpool Steam Co. v. Phenix Ins. Co., supra, 129 U. S. 462, 9 Sup. Ct. 469, 32 L. Ed. 788; North Eng-

land Ins. Ass'n v. Armstrong, L. R. 5 Q. B. 244; Comegys v. Vasse, 1 Pet. 193, 212, 7 L. Ed. 108. It is true, as claimed, that such right is not founded on contract, but is a creature of equity (Memphis, etc., R. R. v. Dow, 120 U. S. 301, 302, 7 Sup. Ct. 482, 30 L. Ed. 595); still it is none the less a right that is entitled to protection, and, as Justice Harlan said in that case, is enforced for the purpose of "accomplishing the ends of substantial justice."

[2] Admittedly the subrogated rights of all the insurers of the Etruria were, when acquired, entitled to equal protection; but it is urged that the nonconsenting insurers destroyed this equality by waiver. Certainly the right of subrogation, like many other rights, may be waived. The theory of appellees·is that the appellant insurers, when requested to authorize the libel suit and share in its expense, were put to an election either to prosecute the suit or to waive equality in their subrogated rights as to the Etruria. The intent to waive is said to be strengthened as to the five appellant insurers of the Stone, because they contributed to the expenses of her owner in the libel litigation. It is worthy of notice that no suggestion of this kind is made respecting the two appellee insurers of the Stone, who made like contribution, and yet were permitted to share ratably with the other appellees in the sum recovered of the Stone.

Was it necessary that these two appellees should place themselves on both sides of the libel proceeding, in effect sue themselves, in order to avoid waiver of their subrogated rights respecting the Etruria? To say the least, it would be more consonant with well-known rules of procedure to defend one interest, with either a declared or an undeclared, though actual, purpose to hold the other, than to resort to the method adopted by these two appellees. After all, it is *the existence of the interest* in the vessel proposed to be libeled, rather than the declaration of purpose, that would seem to be the true basis of any right to defend the one interest and hold the other. Besides, the owner of the Etruria stated in its request that it knew the insurers of the Etruria were "in part at least also interested as insurers on the Stone," and plainly both the owner and the consenting insurers knew that the suit could not benefit the insurers of the Stone, and that no opportunity to render services of any value to them through such a suit existed.

In view of the form of the request, can it be that waiver of vested subrogated rights like these is predicable either of the act of refusal or of defending such rights? Apparently more reason might be found to justify the course taken by the insurers of both vessels, than is observable in respect of the refusal of the insurers of the Etruria only; for recovery would have to be met by the former, and simply received by the latter. However, this case does not require us to pass upon the relative rights of these two classes of appellants further than to hold, as we now do, that the rights of the appellant insurers of the Stone are at least equal to those of the appellant insurers of the Etruria alone. Brown v. Merchants' Marine Ins. Co., 152 Fed. 411, 413, 81 C. C. A. 553. True, the case of The Livingstone, 130 Fed. 746, 65 C. C. A. 610, there relied on, reversed the decision below, where a claim of waiver under circumstances kindred to those involved here was dis-

allowed. 122 Fed. 278, 285. But we think the reversal was not intended to affect the principle announced in the decision below and approved by Judge Gilbert in Brown v. Merchants' Marine Ins. Co., supra.

The facts attending the libel proceeding in question show that the subrogated rights of all the insurers of the Etruria were intended to be enforced and preserved without exacting a surrender of any. It will be recalled that the request of the insurers of the Etruria was made by her owner, and was in terms to authorize the suit against the Stone and to share in "the expense of the litigation." In the libel filed in the cause, and under which the question of liability was settled, it was averred, among other things, that:

"* *· * Libelant proceeds as owner of the steamer and for the benefit of its insurers, and as bailee of the cargo laden on board said steamer at the time and lost with said steamer, and trustee for the owner and insurers thereof, and for the crew for their lost personal effects. * * *"

Further, after stating the total amount of damages alleged to have been suffered, libelant says:

"Which [amount], in its own behalf and as bailee of the cargo and trustee of the owners thereof, and the insurers thereon, and as trustee for her officers and crew, it claims from the said steamer Amasa Stone."

[3] The amount sued for was in excess of the total insurance paid; but, since the damages resulting from the collision were divided, the total recovery on account of the loss of the Etruria was materially less than her agreed valuation for insurance. So far as the libel is applicable to the amount recovered, the suit was wholly of a representative character, and the owner of the Etruria, the Transit Company, was, under well-settled principles, trustee for the beneficiaries of such recovery. United States v. American Tobacco Co., 166 U. S. 468, 474, 17 Sup. Ct. 619, 41 L. Ed. 1081; Fairgrieve v. Marine Ins. Co., 94 Fed. 686, 688, 37 C. C. A. 190 (C. C. A. 8th Cir.); The St. Johns (D. C.) 101 Fed. 469, 473, and decisions there cited; Arnould on Marine Ins. § 1226, at page 1388. In view of one feature of the argument, we pause to say that the representative character of the libel suit and the trust relations existing between libelant and the insurance beneficiaries would, as regards the present issues, have been the same, even if the recovery against the Stone had exceeded the agreed insurance valuation of the Etruria.

Learned counsel concur in the proposition that, where the value of destroyed property exceeds the insurance, the insurance company, on payment of the loss, cannot in its own name sue the wrongdoer, but that the suit must be in the name of the owner of the destroyed property; the theory being that the "wrongful act was single, and indivisible, and gives rise to but one liability." Ætna Ins. Co. v. Hannibal & St. Joseph R. R. Co., 3 Dill. 2, Fed. Cas. No. 96. Upon this it is urged for appellants that it was *necessary* for the Transit Company to sue upon the entire cause of action, and so, as trustee, to protect the rights, not merely of part, but all, of the insurers holding subrogated interests.

This gives rise to several questions touching the remedies open to a large number of holders of kindred subrogated interests to enforce

their rights, which we need not consider, because (1) as stated, the owner in fact brought the suit in its own name for the benefit and as trustee of the insurers quite as distinctly as it in terms brought the suit in part for its own use and benefit; and (2) apart from this express assumption of a trust, the law itself, as a general rule, fastens upon an owner similar trust obligations in favor of insurers to the extent of their subrogated interests, where the suit is in fact brought, as here, in the name of the owner and upon a loss exceeding the total insurance.   Norwich Union Fire Ins. Soc. v. Standard Oil Co., 59 Fed. 984, 987, 8 C. C. A. 433 (C. C. A. 8th Cir.); Fairgrieve v. Marine Ins. Co., supra, 94 Fed. 688, 37 C. C. A. 190; Insurance Co. v. Cosgrove, 85 Kan. 296, 299, 116 Pac. 819; Southern Ry. Co. v. Blunt & Ward (C. C.) 165 Fed. 258, 261; Ins. Co. v. R. R. Co., 41 S. C. 411, 412, 19 S. E. 858, 44 Am. St. Rep. 725; Hall & Long v. Railroad Co., 13 Wall. 371, 20 L. Ed. 594, approving Gales v. Hailman, 11 Pa. 515.

[4] Learned counsel for appellees insist in effect that this general rule is not applicable because of the refusal of appellants to sanction the libel against the Stone, and consequently that the suit was representative only as respects the consenting insurers.   We think this is to overlook, not alone the very comprehensive language of the libel, but also the terms of the request itself.   We have seen that one averment of the libel is that "libelant proceeds as owner of the steamer and for the benefit of its insurers," which plainly signifies, not merely the consenting insurers, but all the insurers.   And it is to be observed that one provision of the request seems to have been designed in anticipation of precisely what happened in the libel proceeding.   We refer to the portion stating that, if the action should result in a division of damages—

"the Etruria interests authorizing the proceeding will claim, before  *  *  * accounting to the Etruria interests not authorizing the proceeding for the share of the recovery which would otherwise fall to them, the right to deduct the expense of the litigation."

The owner sought to recover and did recover (to the extent allowed) the proportionate shares alike of all the insurers.   True, it did so in its name as owner, but at last in virtue of its trusteeship respecting such shares.   And it was not until after the libel proceeding was concluded in the court below and affirmed in this court that any claim was made by either the trustee or the consenting insurers that, besides deduction for "the expense of the litigation," the subrogated rights of the nonconsenting insurers of the Etruria should be subordinated to the corresponding rights of the consenting insurers.   With what consistency, then, can either the trustee or the consenting insurers insist that this should be done?   They, in effect, agreed that nothing more should be claimed than "the expense of the litigation."   True, it is suggested that, if no recovery had been made, the owner itself would, so far as the nonconsenting insurers were concerned, have been required to pay the expense of the litigation; but we have seen that the request provided that in such event—

"the Etruria interests not authorizing the proceedings will not be asked to contribute to the expense incurred in prosecuting the claim."

. . One reason for this may be found in the claim made by the owner (and, in truth, proved) in the libel suit that the value of the vessel largely exceeded her insurance; and it might be added that under well-settled rules the duty of the trustee to its cestuis que trustent was to adhere impartially to the terms and conditions of its request.

We think the decisions relied on by appellees are distinguishable. It is enough to say of Woodworth v. Insurance Co., 5 Wall. 87, 18 L. Ed. 517, that it was not a representative suit. The unreported decision in the matter of the petition of the Ætna Insurance Company in the case of Hanna v. Steamer Manitoba differs in several material respects from the present case. While the suit brought by Hanna and Chapin, owners of the propeller Comet, was in form representative, the Ætna, as insurer only on a portion of the Comet's cargo, declined to permit the owners of the Comet to represent the Ætna's interest, and, on the contrary, intervened in its own behalf to secure its proportionate share of the recovery in the libel proceeding. It was entitled to pursue this course to enforce its subrogated right respecting the cargo (The New York, 175 U. S. 187, 209, 20 Sup. Ct. 67, 44 L. Ed. 126; The Beaconsfield, 158 U. S. 309, 310, 15 Sup. Ct. 860, 39 L. Ed. 993; The Atlas, 93 U. S. 302, 316, 23 L. Ed. 863; In re Lakeland Transp. Co. [D. C.] 103 Fed. 328, 330); but by bringing its own suit the Ætna destroyed the representative character of the libel suit as to itself and all possibility of a trust relation with the owners. It then failed to present its proofs seasonably, and Judge Baxter stated as one of his conclusions of law that:

"Whatever rights it [order of June 3, 1878] conferred on petitioner were waived by petitioner's application of July 18, 1878, and the order of the District Court made thereon."

It is true that the Ætna was repeatedly requested to contribute to the expenses of the libel proceeding, and it was specially found that it "repeatedly and persistently refused to have anything to do with said suit or contribute thereto"; and the learned Circuit Judge further concluded that by reason of such neglect and refusal and of the insufficiency of the damages recoverable to pay in full the damages due those who had contributed to the expense of the libel suit—

"petitioner ought not to be permitted to share in the moneys which may be realized by the libelants and said contributors."

Whatever else may be said of this latter ground of the denial of the Ætna's intervention, apart from the other grounds stated, it should be noticed that the Ætna's refusals were but in accord with its right to maintain a separate suit, and it is hard to see how they could have any other effect than to emphasize its purpose to seek recovery only in that way.

It is not necessary to dwell longer on the cases relied on by appellees. They are all lacking in the controlling features of the instant case. The distribution of the present fund must be governed by the representative character of the libel suit and the terms of the request under which it was commenced and maintained. It was not open to the consenting appellees, after the decree in that case was entered and on

appeal affirmed, to object to a ratable division among all the insurers of the Etruria. Whatever rights of priority the owner or the consenting insurers might have secured, either by limiting the recovery sought to the sum of their respective interests, or by suing for the benefit only of such of the insurers as should sanction the libel and join in its expense, no such course was pursued. No distinction is perceived between the principle that should be applied here and that which prevails in equitable proceedings brought to enforce judgments against interests of debtors that cannot be reached by ordinary legal process. If priority is sought in such proceedings, the suit must be limited to that object, and not in terms extended to all creditors of the same class or creditors generally. This principle is applied in a variety of cases. For instance, in George v. St. Louis Cable & W. Ry. Co. (C. C.) 44 Fed. 122, 123, the late Circuit Judge Thayer, when speaking upon rehearing of a proceeding by judgment creditors to subject property that could not be effectively reached by execution at law, said:

"I have no doubt that the three complainants by whom the bill in this case was filed might have secured a priority by filing the same for their own benefit; but they did not do so. By the very terms of the bill, they professed to be acting, not only for themselves, but 'in behalf of, all and singular, the other judgment creditors of the respondent.' The effect was to waive the advantage they might have obtained by moving in their own behalf. The result is that the suit, in contemplation of law, has from the beginning been prosecuted by the original complainants in behalf of all judgment creditors who might elect to come in and take advantage of what had been done in their behalf."

The same principle was recognized by Justice Bradley in Johnson v. Waters, 111 U. S. 640, 674, 4 Sup. Ct. 619, 637 (28 L. Ed. 547), and by Justice Matthews in Freedman's Savings & Trust Co. v. Earle, 110 U. S. 710, 716, 4 Sup. Ct. 226, 229 (28 L. Ed. 301), where he stated the rule thus:

"It is to be noted, therefore, that the proceeding is one instituted by the judgment creditor for his own interest alone, unless he elects to file the bill also for others in a like situation, with whom he chooses to make common cause."

In Jones v. Fayerweather, 46 N. J. Eq. 235, 256, 19 Atl. 22, 25, when speaking of three creditors of an insolvent firm who had each brought a suit to subject property of the debtor in his own behalf alone, Chief Justice Beasley said:

"Such procedures have no affinity with bills exhibited by complainants, not only for the benefit of themselves, but equally for that of all other creditors who may be made parties; for the very form of such bills excludes the idea that any creditor, or any class of creditors, is to obtain any preference over the others."

See, also, Talcott v. Grant Wire & Spring Co., 131 Ill. 253, 254, 23 N. E. 403.

[5] It is settled in this court that so far as time is concerned it is competent to intervene before final distribution of such a fund is made, for the purpose of presenting claims to an interest therein and for their establishment by decree (Mason v. Marine Ins. Co., 110 Fed. 452, 454, 49 C. C. A. 106, 54 L. R. A. 700; Continental Trust Co. v.

Toledo, St. L. & K. C. R. R. Co. [C. C.] 82 Fed. 642, 646; Central Trust Co. v. Richmond,· N., I.· & B. R. Co., 105 Fed. 803, 808, 45 C. C. A. 60; see The Propeller Monticello v. Mollison, 17 How. [58 U. S.] 152, 155, 15 L. Ed. 68; The Nonpariel [D. C.] 149 Fed. 521, 525, and cases there cited); but the priority given by the decree below to the expense of the libel litigation should be preserved as against appellants as well as appellees (Trustees v. Greenough, 105 U. S. 527, 532, 26 L. Ed. 1157; Central Railroad v. Pettus, 113 U. S. 124, 126, 5 Sup. Ct. 387, 28 L. Ed. 915).

Appellants properly admit that the cargo underwriter should be paid in full, less cargo's proportion of legal expenses. The George W. Roby, 111 Fed. 601, 616, 49 C. C. A. 481 (C. C. A. 6th Cir.); s. c. (D. C.) 103 Fed. 332, 333. The remaining items pertain to freight and crew, the former item having been included below with the claim for insurance paid on hull by the Western Assurance Company as insurer also of the freight. The contention is that the claims for freight and crew shall be placed on a parity with the claims of the insurers of the hull, subject to ratable apportionment of the legal expenses allowed. This method was pursued in the decree below, so far as the appellee insurers of the hull were concerned. The assignments respecting the former items have, therefore, been practically disposed of by the effect of our conclusion: That the claims of all the insurers of the hull (of the Etruria), appellées and appellants alike, must be placed on an equality; and the claims for freight and crew. will be placed on a parity with them.

The decree below is reversed, with costs, and the cause is rémanded, with instructions to enter a decree not inconsistent with this opinion.