## THE TEASER.

### (District Court, D. Massachusetts. December 13, 1913.)

#### No. 230.

1. ADMIRALTY (§ 82*)—REHEARING AFTER INTERLOCUTORY DECREE.
   While there is no rule or settled practice which necessarily prevents a court of admiralty from entertaining a petition for rehearing in a collision suit after the entry of an interlocutory decree on the merits, but before final decree, regardless of the lapse of time, only exceptional circumstances could justify the reopening of the case on a petition filed after the lapse of any considerable time, on the ground of newly discovered evidence, and it should at least appear that the new evidence, if produced, could be accepted for the purpose of reversing the finding at the hearing.

   [Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 674, 676–678; Dec. Dig. § 82.*]

2. ADMIRALTY (§ 82*)—REHEARING AFTER INTERLOCUTORY DECREE.
   Affidavits of parties and counsel as to statements made by a witness in a collision suit, more than 3 years after the hearing at which he testified, and more than 2½ years after the entry of an interlocutory decree on the merits in favor of the vessel on which he was a seaman, *held* insufficient to support a petition for rehearing; it appearing, also, that he

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

refused to sign an affidavit, and there being no clear showing as to what his testimony would be, if produced.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 674, 676–678; Dec. Dig. § 82.*]

In Admiralty. Suit for collision by John L. McDonald and others, owners of a schooner, against the tug Teaser and barge in tow. Petition by claimants for rehearing, after interlocutory decree for libelants. Denied.

See, also, 188 Fed. 721.

Benjamin Thompson, of Portland, Me., for libelant.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for claimant of the Harrisburg.

Carver, Wardner, Cavanagh & Walker, of Boston, Mass., for claimant of the Teaser.

DODGE, Circuit Judge. The collision between the libelants' schooner and a barge, towed by the Teaser, out of which this case arose, happened on October 13, 1907. The libel was filed September 20, 1909. After a hearing begun February 1, 1910, and completed by arguments on July 21, 1910, the tug and barge were held at fault for the collision and the schooner free from fault. The opinion was filed January 31, 1911, and an interlocutory decree entered accordingly February 9, 1911.

Assessment of the damages under the interlocutory decree appears to have been long delayed, no final decree having been entered when the present petition was filed on November 5, 1913. The petition asks for a rehearing or reopening of the case on the questions of fault, but it comes more than 6 years after the collision, more than 3 years after the hearing on the merits, and more than 2½ years after the interlocutory decree which determined those questions.

The petition is based upon alleged statements made in January, 1913, and subsequently, to the respondents or to their counsel, by Wilmot Sabean, one of the crew of the schooner and one of the men on her deck at the time, who gave his testimony as a witness for the libelants, in person, at the hearing in February, 1910. These statements tend to contradict testimony he gave at the trial.

[1] It is objected that the petition comes too long after the interlocutory decree to be considered at all. Had there been a final decree, no rehearing could be ordered after the term had closed. In most cases of this kind there is no such delay in ascertaining the amount of damages and in entering a final decree as there has been here, so that, under ordinary circumstances, the time for any rehearing would long ago have expired. None having been entered, however, I know of no authority or settled practice which enables me to say that the mere lapse of time, in and of itself, must necessarily forbid any consideration of such a petition, although, for obvious reasons, it must

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

constitute a serious objection to the reopening of any case finally submitted and decided, so far as the merits are concerned, so long ago.

The petition differs from ordinary petitions for rehearing on the grounds of subsequently discovered evidence, in that it does not set forth the substance of the testimony sought to be introduced, sworn to by the witness whom it is proposed to call, or by any one who can say he will give it if called. Sabean himself has made no affidavit, and it appears from the affidavits of those to whom he is said to have made the statements, that he has declined to make any sworn statement himself. The reopening of the case asked for is only, therefore, to give the respondents an opportunity of attempting in some way to get sworn evidence from him before the court, which might warrant a reconsideration.

Exceptional circumstances only could justify reopening any case once submitted and decided on the merits for such a purpose as this. Still more exceptional must be the circumstances which would justify such a reopening so long after the decision. Nothing short of the most cogent reason to believe that injustice could not otherwise be avoided would be enough. What appears on the present petition and the annexed affidavits is, in my opinion, wholly inadequate for the purpose.

[2] In any event it would certainly have to appear, as the first thing necessary, that Sabean's testimony, if now taken, and if to the effect which the respondents say they have reason to expect, could now be accepted for the purpose of reversing any finding made upon all the evidence heard at the trial in 1910. Upon the papers submitted, it seems to me clear that no testimony he might now give ought to be accepted for any such purpose. These show his first disclosures to the respondents, not made until nearly 2 years had passed since the decision, to have developed into the statements now relied on during successive interviews with the respondents' representatives extending over a further period of nearly 9 months.

A registered letter sent by Sabean to the respondents in Philadelphia January 20, 1913, and received by them January 21, 1913, was the first communication, so far as appears, from him to them since the trial and decision in 1910–11. In this, after stating that he hears the case is not settled and is "goin in cort again," he says, "Well if it does if we can fix it up I will be in your favor." An intimation follows that he will tell them something about the "value of the boat." There is nothing further as to the nature of what he will tell in the respondents' favor. His address is then given, and he requests them to write him.

Next in order of time appears to have come an interview between Sabean and Mr. Wardner, counsel for the tug, at Boston. In an affidavit sworn to October 29, 1913, Mr. Wardner states that he wrote Sabean January 24, 1913, after receiving from Philadelphia Sabean's letter of January 20th, that he would like to see him at his office; that Sabean came there and made him an oral statement about the collision, went away, and subsequently brought in this statement, put in writ-

ing by himself at Mr. Wardner's request. A copy is annexed to the affidavit. It deals, not so much with the value of the schooner, about which there are only a few words, as with the facts of the collision. Asked if he would sign and swear to it, Sabean promised, according to the affidavit, to consider whether he would or not, but never again saw or communicated with Mr. Wardner. The written statement bears neither signature nor date. The affidavit does not give the date of either interview described.

Next in order of time appears to have come a letter from F. W. Munn, managing owner at Philadelphia of the tug and barge, to Sabean, dated May 29, 1913. According to Munn's affidavit, sworn to October 17, 1913, this letter began: "Some time ago you wrote me that you had given incorrect testimony at the trial." In Sabean's registered letter of January 20th I find nothing to warrant this statement.

Next in order appears to have come an interview at Bridgeport, Conn., between Sabean and Mr. Gould, sent to Bridgeport for the purpose by counsel for the barge. Mr. Gould's affidavit, also sworn to October 29, 1913, sets forth that this interview was on July 29, 1913, and that he then wrote down, "principally" at Sabean's dictation, a statement of the facts as Sabean presented them to him; that on the next day, July 30th, he himself dictated a writing, which is annexed, not to this affidavit, but to another, again mentioned below, by Mr. Pullman, a Bridgeport lawyer also employed by counsel for the barge. The affidavit goes on to state that the writing dictated as above by Mr. Gould, "with the very slightest changes in phraseology, exactly corresponds" to the statement prepared on July 29th, and that it "conforms in all respects" with Sabean's oral statements that day made. In it I find nothing about the value of the schooner, but only statements regarding the facts of the collision, somewhat amplified from Sabean's written statement given Mr. Wardner.

The writing dictated by Mr. Gould makes Sabean say that when he testified at the trial he knew that some of his statements were not true. From Mr. Gould's affidavit it appears that he began the interview on July 29th by telling Sabean "that I understood he had written to F. W. Munn, * * * and also had stated to" Mr. Wardner " * * * that he, the said Sabean, had given false testimony at the trial," etc. I do not find this in any previous letter to Mr. Munn which is produced, nor in Sabean's written statement to Mr. Wardner. Sabean, however, appears from Mr. Gould's affidavit to have at once adopted and repeated the statement that he had testified falsely at the trial, and to have said, further, he knew he had done wrong, had been greatly worried by reason of the fact, had therefore written Munn, and wanted now "to do what he could to right the wrong he had done by such testimony." This is the first suggestion of anything of this kind appearing to have been made during the six months which had passed since his first communication to the respondents.

The last paragraph of his alleged statement to Mr. Gould makes Sabean say:

"I gave my statement" (i. e., at the trial) "in such a way that it would bear out what the captain wanted me to testify to. I remember that the cap-

tain and the rest of the crew said that, of course, we wanted to get some money out of the case to pay for the things that were lost, and I supposed that if I told just the kind of story that they wanted me to that I would get my money."

Further reference is made below to this paragraph.

Mr. Gould does not set forth any attempt to get Sabean's oath to any statement. Next in order, however, appear to have come interviews between Mr. Pullman, of Bridgeport, employed by counsel for the barge, on August 4 and August 23, 1913, at which Sabean is claimed to have stated that Mr. Gould's written paper, prepared July 30, 1913, contained the truth, but to have declined to swear to it for fear of the consequences to himself. An affidavit by Mr. Pullman, sworn to October 21, 1913, purports to set forth what took place at these interviews and at a still later interview on October 20, 1913, after Sabean had seen Mr. Blodgett, counsel for the barge, in Boston, on October 4, 1913. The alleged statements of Sabean at these interviews are to the same effect in general as those reported by Mr. Gould. Mr. Pullman avers, as does Mr. Gould, that he has not paid or promised anything to Sabean. For any purposes, except as above stated, I must decline to accept or consider Mr. Pullman's affidavit, for the reason that it incorporates a letter, dated July 31, 1913, from Mr Blodgett to Mr. Pullman, and two letters from Mr. Pullman to Mr. Blodgett, dated August 4 and August 23, 1913. In these letters are contained instructions, statements, and expressions of opinion transmitted between counsel, both acting in the respondents' interest. I am obliged to regard their contents as inadmissible, and improperly introduced here. I cannot believe that counsel acting on the same side may thus make evidence, even in an affidavit, of their communications to each other. Mr. Gould's affidavit is to some extent open to a like objection.

Following in date the interviews of August 4th and 23d appears a letter received by Mr. Munn, according to his affidavit, from Sabean, in September, 1913. I find nothing in it differing in substance from alleged statements previously made by Sabean at one time or another, except the sentence, "The most that I said that wasn't right I was forsed to say was rite." Taken in connection with what has been quoted from his alleged statement to Mr. Gould, I think it clear that this deserves no credit whatever. He could not be heard to claim that he was "forced" to say anything he said in order to "get his money."

The interview of October 4, 1913, between Sabean and Mr. Blodgett, appears from an affidavit by Mr. Blodgett, sworn to October 29, 1913. According to this, Sabean then made statements, additional to those he had previously made, tending to show the schooner's lights not to have been in good condition at the time of collision; but to these statements, like the others, he declined to swear.

It may be true, if the respondents did not first approach, but were approached by, Sabean, that what is said by the court in Palmer v. Merchants' etc., Co. (D. C.) 154 Fed. 683, 701, does not apply here to its full extent. It remains true, however, that suspicion must al-

ways attach to dealings like those with a witness from the other vessel in a collision case. The danger involved seems to me well illustrated by the nature of Sabean's first communication to the respondents, in connection with his progressive disclosures during the subsequent interviews with him. Nor does this imply the conclusion or suggestion that there has been consciously improper dealing with him on the part of any of the interviewing counsel.

If he were now to make these statements under oath, and whether or not the respondents have paid or promised him anything, I should be unable, under the circumstances shown, to accept or rely upon them for any purpose. The facts that he remained silent as to any want of truth in his testimony at the trial, from February, 1910, to January, 1913, permitting the court meanwhile to deliberate upon and decide the case in January, 1911, and that the first suggestion from him of any desire to change his testimony is an intimation to the respondents that he would be in their favor "if we can fix it up," make it impossible for me to believe in the honesty of such statements as he is said to have made since, or of his motive in making them.

To now open the controversy once decided for relitigation because of them would, in my opinion, be to inflict an injustice upon the libelants and to establish a highly dangerous precedent. Sabean's testimony at the trial, it may be added, was by no means of such importance to the result reached that it can be called in any sense controlling.

The libelants move to strike the petition from the files. I am not satisfied that I have the right to take this course. There do not appear to be any such clearly defined rules regarding petitions for rehearing or reopening as would warrant a finding that, on the face of the petition, it is wholly unfit to be considered. The reasons which have led me to dismiss it become apparent upon consideration of it. That I have found part of the matter annexed to it, in support of it, inadmissible, or not proper to be introduced, does not seem to me to warrant striking the whole petition and everything annexed to it from the files.

Since the petition and affidavits were submitted on November 14th, leave to file a further affidavit by Mr. Wardner has been asked. It annexes the original of Sabean's written statement, which is unnecessary; the copy first presented having been assumed to be a true copy. It further sets forth alleged oral communications to the libelants' counsel about Sabean, made since January, 1913. The court cannot be expected to consider alleged oral statements or notices between opposing counsel. Leave to file the affidavit must therefore be refused.

The petition for rehearing is denied.