### ROSE AND LUCY, INC.
#### v.
### F/V SAINT ANNA MARIA.
#### No. 64-40.

United States District Court
D. Massachusetts.
March 24, 1966.

Robert J. Hallisey, Hiller B. Zobel, Bingham, Dana & Gould, Boston, Mass., for plaintiff.

James A. Whipple, Kneeland & Splane, Boston, Mass., for defendant.

FRANCIS J. W. FORD, District Judge.

This is an admiralty action in which libelants as owners of the fishing vessel ROSE AND LUCY seek to recover damages sustained because of the sinking of the ROSE AND LUCY after it had been struck by the fishing vessel SAINT ANNA MARIA on January 4, 1964.

On the day of the collision both of these vessels with other boats of the Gloucester Fishing Fleet had been fishing since early morning at a fishing area known as New Scantum located in the ocean to the northeast of Gloucester. The ROSE AND LUCY was dragging for ground fish. It had already made one "set", an operation involving setting its nets over the side, towing them for about

an hour along the edge of the fishing bank, then hauling the nets back and depositing the fish on deck. At about 10:45 A.M. it set out its net again and began towing at a speed of 2½ knots in an easterly direction. Captain Rubino was in the pilot house and the rest of the crew members engaged in tasks on the deck or in the fish hold. The day was clear with visibility in excess of 5 miles, seas 4 or 5 feet in height and wind from the west at approximately 15 miles per hour.

After the ROSE AND LUCY had begun its tow in an easterly direction Captain Rubino observed the SAINT ANNA MARIA about a mile away approaching from the port side of the ROSE AND LUCY. The SAINT ANNA MARIE was traveling on a W.S.W. course at a speed of about 9 knots, heading in the direction of Gloucester. When the SAINT ANNA MARIA had come within a half mile of the ROSE AND LUCY and was still on a course which would bring her in collision with the ROSE AND LUCY, Captain Rubino sounded his air whistle and thereafter sounded a series of blasts on his whistle. (These whistle signals were heard by Captain Scola of the F/V ROSE MARIE, who was nearby.) When the SAINT ANNA MARIA had come within several boat lengths of the ROSE AND LUCY without any change in course or speed, Captain Rubino signaled his engineer to disengage his engine and put his helm hard to starboard. The SAINT ANNA MARIA continued on its course and struck the ROSE AND LUCY on its port bow. The ROSE AND LUCY'S pumps were started immediately but the vessel sank in about ten minutes after the collision.

Captain Ciulla of the SAINT ANNA MARIA was alone in the pilot house of his vessel at the time of the collision. His son had been with him but had gone below some time before. He had no lookout posted. Ciulla admitted that visibility was good on the day of the collision, but that spray obscured his view through the pilot house windows, and that he had no windshield wipers. The SAINT ANNA MARIA was equipped with radar but it was not being operated on that day. Except for one window partly open the windows of the pilot house were closed. Ciulla testified that he heard no signal and did not see the ROSE AND LUCY until he was bearing down on it about six or seven feet in front of him.

■ The collision was clearly due to the fault of the SAINT ANNA MARIA. Its duty in the situation was prescribed by Rule 19 of the International Rules, 33 U.S.C.A. § 146c, which provides: "When two power-driven vessels are crossing, so as to involve risk of collision, the vessel which has the other on her own starboard side shall keep out of the way of the other." Due to what was apparently a complete lack of attention on the part of Captain Ciulla, the SAINT ANNA MARIA did nothing to avoid the collision in a situation in which it was its duty to keep out of the way of the ROSE AND LUCY. The SAINT ANNA MARIA was also at fault in failing to keep a proper lookout in violation of Rule 29, 33 U.S.C.A. § 147a.

■ Respondent contends the ROSE AND LUCY was also at fault. First it argues that under Rule 9 as then in effect, 33 U.S.C.A. § 145g(e) (ii), the ROSE AND LUCY while engaged in trawling should have shown a basket where it could best be seen, as a signal. Admittedly, the ROSE AND LUCY displayed no basket. This fact, however, played no part in the collision. Whatever relevance it might have on the question of whether the SAINT ANNA MARIA violated Rule 26, 33 U.S.C.A. § 146j, requiring it to keep out of the way of a vessel engaged in trawling, it has no relevance on the question of violation of Rule 19. The SAINT ANNA MARIA violated Rule 19, not because it was in any way misled by the ROSE AND LUCY'S failure to show a basket, but because its captain completely failed to see the ROSE AND LUCY itself. Hertz v. Consolidated Fisheries, Inc., 9 Cir., 213 F.2d 801.

Respondent secondly urges that the ROSE AND LUCY failed to take the evasive action required by Rule 21, 33 U.S.C.A. § 146e, which provides: "Where by any of sections 146–146k of this title one of two vessels is to keep out of the way, the other shall keep her course and speed. When, from any cause, the latter vessel finds herself so close that collision cannot be avoided by the action of the giving-way vessel alone, she also shall take such action as will best aid to avert collision * * *."

■■ It is easy in the light of what happened to determine that the ROSE AND LUCY might have taken action to avoid the collision by altering its course or speed, or even by knocking out its hookup block, which would tend to cause the vessel to swing sharply to starboard. However, the conduct of Captain Rubino must be judged in the light of the circumstances in which he found himself. His vessel was proceeding slowly and with its net out was hard to maneuver. His primary duty was to keep his course and speed, as he did until the last moment. He could not tell what the SAINT ANNA MARIA was going to do. It might notice the ROSE AND LUCY at any time and take action to avoid it. Its captain might be deliberately delaying any avoiding action until the last moment. It might be, as Rubino suggested in his testimony, that the SAINT ANNA MARIA intended a close approach for the purpose of speaking to the ROSE AND LUCY. Any maneuver he made might involve him in a collision if the SAINT ANNA MARIA made a corresponding change. Under Rule 21, he had neither the right nor the duty to change his course and speed until it was clear that no action by the SAINT ANNA MARIA alone could avoid the collision. In the absence of any evidence as to how close the SAINT ANNA MARIA could have approached before taking action and still have avoided the collision, the court cannot find Captain Rubino at fault in waiting as long as he did before making any change. He was an experienced master. He followed the course which in his judgment, in the emergency thrust upon him solely by the fault of the other vessel, was best calculated to avoid collision. "It is the duty of the court, as far as possible, to place itself in the position of the master and to endeavor to interpret the rules of navigation in the light of the perils and perplexities which surrounded him at the time—the impending danger, the excitement of the moment, the necessity for immediate action. Where a navigator of experience and good judgment acts, in such circumstances, his action, if within the limits of reasonable judgment and discretion, cannot be imputed to his vessel as a fault. If he acts upon his best judgment at the time it is sufficient, even though subsequent judicial investigation may show that he might have chosen a more prudent course. A master who the next moment may be sinking with his ship and crew cannot be expected to display the utmost coolness and deliberation." The Gulfstar, 3 Cir., 136 F.2d 461, 465; Northern Petroleum Tank Steamship Co., Ltd. v. City of New York, 2 Cir., 282 F.2d 120; Pacific-Atlantic S.S. Co. v. United States, 4 Cir., 175 F.2d 632.

■ Libelant is, of course, entitled to recover the fair value of its vessel which was sunk. The ROSE AND LUCY was a wooden hull fishing vessel with its home port in Gloucester. It was a vessel of 70 gross tons, 41 net tons, 81.8 feet in length, 18 feet in breadth, and 8.7 feet in depth, built in Damariscotta, Maine, in 1930. It had a 220 H.P. Atlas diesel engine installed in 1943. This type of engine is no longer manufactured and parts for repair are not readily obtainable. The vessel was insured by libelant for $30,000. It was in good condition for a boat of its age and had been well maintained.

■ There was evidence of sales of several other fishing vessels in the Gloucester area in recent years. These vessels, however, differed among themselves and from the ROSE AND LUCY in size, age, condition, and power equipment to such an extent that these sales in themselves do not present any very

definite guide for determination of the value of the ROSE AND LUCY.

There was evidence from several witnesses as to the value of the vessel. One Parisi, an officer of libelant corporation, testified that it was worth $60,000. He had no familiarity with the market for fishing vessels and his testimony was rather a statement of what the vessel was worth to him than any informed opinion of what it would be worth on the actual market. Grinnell, an expert presented by libelant, placed the value of the vessel at $51,500. Grinnell, a former fisherman and owner of a marine railway, was familiar with the ROSE AND LUCY, on which his yard had done repair work. However, his knowledge of the market for fishing vessels seems to have been limited to a casual knowledge of a few local sales. The other expert, Hart, who valued the vessel at $55,000, had an extensive knowledge of the general market for fishing vessels. However, he had never closely examined the ROSE AND LUCY and had in fact only casually observed it one or two times when it was in port.

One Cusick, another boat yard owner who had performed repairs on the ROSE AND LUCY and who had knowledge of other vessels in the Gloucester fishing fleet and some knowledge of sales of such vessels, testified as a witness for libelee, that the vessel was worth between $30,000 and $35,000.

Kershaw, another expert called by Libelee, placed the fair market value of the vessel at $40,000. Kershaw had a wide experience in the appraisal of fishing vessels. Moreover, he had surveyed the ROSE AND LUCY at least six times, the last survey having been made on February 12, 1963. In the light of his experience, his knowledge of the market for fishing vessels and his familiarity with the vessel in question, his opinion seems to be the most reliable guide. The court finds the fair market value of the ROSE AND LUCY, its gear and equipment, at the time it sank was $40,000.

In addition, fish worth $400 was lost, and crew members suffered loss of personal clothing and effects in the amount of $290 for Captain Rubino, $311.54 for William Parisi, and $243.83 for Joseph Parisi.

The final decree must await resolution of questions raised by libelee's motion to amend its answer on which hearing has not yet been held.