**ROSE AND LUCY, INC.**

v.

**F/V SAINT ANNA MARIA.**

**No. 64–40.**

United States District Court
D. Massachusetts.
May 10, 1968.

**142**

Robert J. Hallissey, Hiller B. Zobel, Bingham, Dana & Gould, Boston, Mass., for plaintiff.

James A. Whipple, Kneeland & Splane, Boston, Mass., for defendant.

## OPINION

FRANCIS J. W. FORD, District Judge.

A collision at sea on January 4, 1964 between the fishing vessels ROSE AND LUCY and SAINT ANNA MARIA has given rise to protracted litigation in this court. Both vessels were insured under hull policies and P. & I. policies by the same underwriters, Resolute Insurance Company and Lloyds Underwriters and/or Institute of London Underwriters.

The ROSE AND LUCY sank as a result of the collision. When the underwriters refused to pay the $30,000 face value of the hull insurance policy on this vessel, the owner brought an action in this court in which it recovered judgment for that amount. Rose and Lucy, Inc. v. Resolute Insurance Company, D.C., 249 F.Supp. 991. Eventually, after a second action had been brought to enforce this judgment, payment in full was made by the underwriters.

Meanwhile the present action had been commenced by the owner of the ROSE AND LUCY against the other vessel in the collision. After trial, this court found that the collision was due to the sole fault of the SAINT ANNA MARIA, and that the fair market value of the ROSE AND LUCY at the time it sank was $40,000. Rose and Lucy, Inc. v. F/V Saint Anna Maria, D.C., 252 F. Supp. 76.

Hearing has now been held on the issues raised by defendant's amendment to its answer in which it alleges that the subrogation rights of the underwriters, arising from the $30,000 payment made on the hull insurance policy on the ROSE AND LUCY have been transferred to it, and asking that this amount be deducted from the amount of the judgment which would otherwise be entered against it.

Plaintiff objects to any such allowance, contending that the assignment is invalid, and that in any event the subrogation rights of the insurers have been forfeited, and further asks that if the defendant's subrogation claim is upheld, plaintiff's litigation expenses should be charged against any such allowance.

Plaintiff argues that the assignment is invalid because it was made by an agent without authority, it was not supported by consideration, and represents an attempt by the insurer to make an assignment to itself.

The underwriters having paid the $30,000 loss under the hull policy have a right (passing for the moment the consideration of whether this may have been forfeited), as subrogees to be reimbursed for this payment out of any recovery by the vessel against a third party found liable for the loss. In general, if the plaintiff here recovered from such third party the full $40,000 value of its vessel, the underwriters could recover from plaintiff here, in a separate action, $30,000 of that amount. In this case, however, the same underwriters have insured the SAINT ANNA MARIA under a P. & I. policy by which they have become ultimately liable to pay the $40,000. They could pay the $40,000 and then bring a separate proceeding to recover $30,000. The assignment device

adopted here simply avoids this circuitous procedure and assures that the judgment entered here will accurately reflect the fact that as a practical matter all that the underwriters should do is pay plaintiff the $10,000 additionally due to reimburse it for the full amount of its loss.

■ Such a procedure is not novel. The Potomac, 105 U.S. 630, 26 L.Ed. 1194; Risdal v. Universal Insurance Co., D.C., 232 F.Supp. 472, 474. If the insurers' subrogation claim is valid it does no harm to plaintiff. There is no merit to plaintiff's technical objections to the validity of the assignment. On the evidence presented the Court finds that Enos, who executed the assignments had full authority to do so. Defendant and its insurers were clearly distinct parties, even if as to this action their interests coincided. If consideration was necessary for the validity of the assignment (Cf. Graustein v. Boston and Maine Railroad, 304 Mass. 23, 22 N.E.2d 594) there was adequate consideration in that the assignors benefitted by reducing their potential liability and satisfying in part their liability to defendant under its P. & I. policy.

Plaintiff's principal argument is that since the right of subrogation is a creation of equity, Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190, it cannot be asserted in this case because the underwriters have been guilty of misconduct with respect to this case.

■ First of all, plaintiff cites the delay in paying the loss under the hull policy on the ROSE AND LUCY. Payment was not made until January, 1966, a little over two years after the loss. Most of this delay was due to the fact that the insurers asserted certain defenses to payment which ultimately had to be passed upon by this Court after trial. Judgment was entered on June 29, 1965. The insurers appealed but later withdrew their appeal on September 7, 1965. The remaining delay was in part explained as due to problems in obtaining funds for payment from the foreign insurer involved. Although the defenses relied upon by insurers were not upheld by this court and in fact appeared to be somewhat tenuous, yet they were not altogether frivolous. Assuming that an insurer should forfeit its right to subrogation by putting forward in bad faith a defense which it knows to be utterly without merit and which is interposed merely to delay and harass the insured, it cannot be found that what the insurers did in this case amounted to such unconscionable misconduct.

■ On the day of the collision or within a day or two thereafter counsel for the insurers (who are also counsel representing defendant here) interviewed the available witnesses including crew members of the ROSE AND LUCY and obtained signed statements from them. In two instances these statements were used at the trial in cross-examining crew members who had testified. There is certainly nothing sinister in the fact that the insurers, upon learning of a collision between two vessels, on each of which they had two insurance policies outstanding, under any or all of which claims might be made, should take immediate steps to investigate and take statements from witnesses while events were still fresh in their minds. Plaintiff does not seem to suggest that they should have done otherwise, except for its argument that from the beginning the insurers should have employed two sets of counsel and investigators. No doubt an insurer of both parties involved in a collision may at times find itself in a position where its duty to defend one party in good faith conflicts with its duty of good faith defense for the other. (Cf. Detenber v. American Universal Insurance Co., 6 Cir., 372 F.2d 50). When such a situation develops it may be necessary for the insurer to adopt a course of procedure which will preserve its neutrality. But this does not mean that in its first investigation of the facts and before it can even know just what claims may be made by the insured, it is required to assume the burden of two separate and

independent investigations. The insurers were entitled to protect to the full their own legitimate interests. Mere speculation of counsel as to possible improper advantages which might accrue to insurers are not evidence that insurers here were engaged in any sinister maneuvering to deprive plaintiff of its rights. Certainly there was nothing here comparable to the procedure condemned in The Teaser, D.C., 217 F. 920, 921, where three years after trial respondent obtained from libelant's witness a recantation of his trial testimony to support a petition for reopening the case.

■ Any duties of the insurers toward plaintiff must arise under one of the two policies they had issued to it. When they paid the full amount of the $30,000 hull policy, albeit tardily and reluctantly, they had fulfilled their duty under that policy. Of course they could as subrogees have pursued any tortfeasor liable for the loss but they were under no duty to do so. If, as plaintiff believed, its loss was greater than the amount insurers had paid it, it was for plaintiff to pursue any further remedies against the wrongdoer.

Any duty owed to plaintiff by the insurers under the P. & I. policy on the ROSE AND LUCY is not involved here, since no claim is being made against the ROSE AND LUCY. Hence we are not concerned with the possibilities argued by plaintiff in a situation where each of the vessels insured is claiming damage from the other and the insurers are in a position where their own self-interest makes it advantageous to them to support a finding in favor of one insured rather than the other.

In the circumstances of the present case it was not wrong for the insurers, who would ultimately have to pay any judgment, to assume the defense of the claim of the ROSE AND LUCY against the SAINT ANNA MARIA.

The principles of equity are not to be applied in such a way as to defeat the doing of substantial justice between the parties involved. To deny to the insurers the benefit of their subrogation claim in this situation would mean that in addition to the payment already made of $30,000 to the ROSE AND LUCY, the insurers in accordance with the judgment in this action would have to pay an additional $40,000. Plaintiff would be collecting a total of $70,000 as compensation for a vessel which this court has found had a fair value of only $40,-000. Nothing plaintiff has shown as to the insurers' conduct calls for such a disproportionate penalty.

■ In support of its claim for litigation expenses, plaintiff relies on Federal Insurance Co. v. Detroit Fire & Marine Insurance Co., 6 Cir., 202 F. 648. The procedure in that case of charging against the amount due to the insurers by way of subrogation a proportionate share of the costs of litigating the claim against the other vessel may have merit in the ordinary case where the recovery of damages by the insured confers a benefit on the insurer who shares by subrogation in the proceeds. The situation here is different. Since the insurers had insured both vessels, the insurers had nothing to gain from an action by the ROSE AND LUCY. The $30,000 paid to the plaintiffs can never be recouped, since anything recovered from defendants here will be paid by the same insurers. The only value to them of their subrogation rights is to use them as they are doing here, defensively, in case suit is brought, to keep themselves from having to pay twice for the same loss. The present action was not joined in by the insurers or brought with their approval, it could bring them no benefit but only the possibility of further loss. The action by the plaintiff here could benefit only plaintiff. Plaintiff in bringing it was acting only for its own benefit and not as a representative of or for the benefit of insurers. There is no basis for shifting the expense of the litigation from plaintiff's shoulders to those of the insurer.

The conclusion is that by virtue of the assignment to the defendant by the insurers of their subrogation rights

against plaintiff, defendant is entitled to have credited to it the full amount of $30,000.

Judgment will be entered for plaintiff in accordance with the findings as to damages made by this court in its opinion of March 24, 1966, after deducting therefrom the amount of $30,000.